Althea Peterson filed a complaint for workmen's compensation benefits in the Circuit Court of Marshall County against Bidermann Industries Corporation, alleging that she was owed benefits for a work-related "occupational disease/accident." Following oral proceedings, the trial court entered an order, finding Peterson to be totally and permanently disabled. Bidermann appeals.
The record reflects, in pertinent part, the following: At the time of the hearing, Peterson was 40 years of age and had been employed by Bidermann in its Arrow Shirt plant for approximately 20 years. She worked as a seamstress, sewing on shirt sleeves and bindings for shirt sleeves.
In the late 1970s and early 1980s, she began to experience problems with her hands breaking out. Peterson was treated for the condition off and on for a number of years. Peterson described her condition as her "hands would swell up and burst open," especially in the palms, causing significant pain and itching. She encountered problems with her arms, her feet, and her face breaking out. During the last two years that she worked, she described the condition as being one that if she would stay away from work for a period of time, her hands would clear up, but when she would return to work, they would break out again. Due to the severity of her condition, she stopped working for Bidermann in September 1991.
Peterson had been treated by a number of physicians for her condition. The depositions of two of her treating physicians were admitted at trial.
Peterson began seeing Dr. David Loveman, a dermatologist, in 1975. Dr. Loveman diagnosed Peterson's condition as pustular psoriasis, an autoimmune disease. In response to the question as to whether Peterson's condition was caused by her employment, Dr. Loveman stated, "No. It wouldn't be the root cause. It might aggravate the condition." Peterson has not seen Dr. Loveman since 1984.
Peterson began seeing Dr. Eric Baum, a dermatologist, in 1988. He diagnosed Peterson's condition as allergic contact dermatitis. In deposition, Dr. Baum opined that her condition was aggravated by allergens or substances that she came in contact with at work. His opinion was based on "the empirical evidence that every time she would get better and I would let her go back to work, she would come back broken out again." He further stated that his conclusion was based on his ten years' experience in treating industrial dermatitis for workmen's compensation purposes. With respect to a prognosis, Dr. Baum indicated that she will never have a cure and that she will continue to break out when she comes into contact with chemicals or substances that irritate her hands.
Dr. Emily Omura, a dermatologist, evaluated Peterson at the request of Bidermann. Dr. Omura described Peterson's condition as being a chronic, ongoing dermatitis. It was her opinion, based on the history provided to her by Peterson, that Peterson's skin condition could possibly be related to something in her work environment. Dr. Omura acknowledged that if a person is exposed to chemicals to which he is allergic or is continuously re-exposed to said chemicals over a period of years, that person could tend to have a more or less chronic condition as a result of the initial exposure and the subsequent re-exposures.
The written opinion of Claude Peacock, Peterson's vocational expert, was admitted into evidence. Mr. Peacock offered the concluding opinion that Peterson was 100% vocationally disabled due to the severity of her hand condition. He was of the opinion that the severity of the condition, and its numerous re-occurrences, would prevent Peterson from engaging in competitive activity.
Dr. Emily DeGusto, Bidermann's vocational expert, was of the opinion that Peterson suffered a 12% vocational disability.
In finding Peterson to be totally and permanently disabled, the trial court found the following: *Page 999 
 "2. The evidence in this case is largely undisputed. The plaintiff worked for the defendant nearly 20 years in the defendant and its predecessor's shirt factory known as the Arrow Shirt Plant in Albertville, Alabama. On a daily basis she handled new shirt material and sewed the same. Over the last several years of her employment she began to suffer episodes where her hands, arms and feet were breaking out which gradually increased to the point where her skin was cracking, itching and so painful that she was unable to work. She saw several physicians and has been diagnosed as having a contact dermatitis. There is no medical evidence that any job condition 'caused' her underlying problem. . . . It is also not substantially disputed that her allergy to something on the job greatly aggravated her condition. . . . Each time she was taken off work she rapidly improved, and then when she returned to work, her condition would worsen. Since leaving the job, her condition is tolerable, but the slightest contact with whatever chemical or chemicals she is allergic to causes her a protracted period where the swelling, itching, and rash become intolerable. The doctors offer no cure or hope that her condition will substantially improve. She is obviously unemployable with this continuing condition. It might well be that she could find some occupation she could do most of the time, but four to six times per year, when her condition worsened, she would be unable to work at all for 3 or 4 weeks. The court finds as a matter of fact that the plaintiff's condition was not 'caused' by her employment but that her employment 'aggravated' her condition and increased her sensitivity to one or more chemicals to the point where she is permanently and totally disabled from any gainful employment.
 "3. The court finds as a matter of fact that plaintiff's employment aggravated her condition so that she has no ability to perform her usual occupation or any other gainful employment. As a matter of law the plaintiff is entitled to permanent total disability benefits as provided under the laws of this state under the Act."
Bidermann argues that Peterson's skin condition and ensuing disability are noncompensable because, it says, she failed to prove that the condition, or the aggravation of the condition, was caused by hazards recognized as peculiar to a particular trade, process occupation, or employment. Such proof is necessary to meet the requirements of the occupational disease statute. § 25-5-110, Code 1975.
The trial court did not make a definitive finding that Peterson suffered from an occupational disease. At trial Peterson traveled under alternate theories. She suggested prior to trial that she was seeking recovery under the "occupational disease" provisions of the Workmen's Compensation Act or, in the alternative, under the "accident" provisions of the act. We agree with Bidermann that the evidence failed to support a conclusion that Peterson's skin condition was peculiar to her particular trade. Our conclusion that Peterson did not suffer from an occupational disease, however, is not dispositive of this appeal because we find that recovery was proper under the "accident" provisions of the act. We find those cases espousing the "cumulative-effect accident" theory to be applicable to the circumstances presented here. See Ex parte Harris,590 So.2d 285 (Ala. 1991); Gattis v. NTN-Bower Corp., 627 So.2d 437
(Ala.Civ.App. 1993).
Bidermann next asserts that the trial court erred in finding Peterson's condition to be compensable because there was no evidence presented that her employment caused the condition or that her employment was the only cause that aggravated her condition.
The trial court addressed Bidermann's concern in the following manner:
 "This court's initial inclination was to totally deny benefits since the plaintiff's disease was not 'caused' by the employment, but [Ex parte Cash, 624 So.2d 576 (Ala. 1993)], seems to be substantially parallel and controlling in this case. The trial court there held that the plaintiff 'suffer[ed] from adult onset asthma or hyper-reactive airways, both chronic obstructive conditions . . ., he does not suffer from byssinosis . . ., nor is his condition caused by employment related *Page 1000 
factors.' The Supreme Court said that the lower court made no finding whether the plaintiff suffered from a disease aggravated by his exposure to cotton dust. In that case (as in this case) there was no real dispute but that his condition was worsened with the exposure to the cotton dust (apparently some chemical in this case). The Supreme Court held that there being no question that he suffered from a disease which was aggravated by the cotton dust, 'no reasonable view of the evidence supports a judgment holding that Cash's disease was not compensable.' In the instant case the plaintiff's disease was not caused by work-related conditions but has clearly been aggravated to the extent she is no longer employable."
In a workmen's compensation case, this court's review is limited to a determination of whether there is any legal evidence to support the trial court's conclusions. If a reasonable view of the evidence supports the findings of the trial court, this court may then determine whether the correct legal conclusions have been drawn therefrom. Ex parte EastwoodFoods, Inc., 575 So.2d 91 (Ala. 1991).
The record supports the court's findings. Although there was little objective evidence, medical or lay, as to the identity of the offending chemical causing Peterson's condition, there was substantial, undisputed, circumstantial evidence that her condition was at least aggravated by some chemical allergen contacted by her at her place of employment. We further find that the court drew the correct legal conclusions from the facts presented. See Hightower v. Brammall, Inc.,435 So.2d 1295 (Ala.Civ.App. 1982); Albertville Nursing Home v. Upton,383 So.2d 544 (Ala.Civ.App. 1980); B.F. Goodrich Co. v. Martin,47 Ala. App. 244, 253 So.2d 37 (Civ. 1971). We commend the court for its thorough inclusion of facts and law in its judgment. We do not always find it so.
Bidermann further asserts that the trial court erred in finding Peterson to be totally and permanently disabled.
The test for permanent total disability is the inability to find gainful employment. Mead Paper Co. v. Brizendine,575 So.2d 571 (Ala.Civ.App. 1990). Total disability does not mean entire physical disability or absolute helplessness. GenpakCorp. v. Gibson, 534 So.2d 312 (Ala.Civ.App. 1988). It is the duty of the trial court to make some determination as to the extent of disability. Genpak. In making the determination, the trial court must consider all the evidence, including its own observations, and interpret it to its own best judgment.Genpak.
In reviewing the record with the attendant presumptions, we find that a reasonable view of the evidence supports the court's discretionary conclusion that Peterson was permanently and totally disabled. Ex parte Eastwood Foods. This is so, particularly in view of the evidence submitted by Peterson's vocational expert.
The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.