Teresa S. Fryfogle sued her employer, Springhill Memorial Hospital, Inc., seeking workers' compensation benefits for an injury she sustained to her lower left abdominal musculature on July 14, 1995, while working in the line and scope of her employment. Following ore tenus proceedings, the trial court entered an order finding that Fryfogle had suffered a 75% loss of wage-earning capacity; that "she is able to perform some of the work of a registered nurse or is able to obtain gainful employment"; and that her average weekly wage was $475.14. Fryfogle appeals.
Because of the date of Fryfogle's injury, this case is governed by the new Workers' Compensation Act. This new Act provides that an appellate court's review of the proof and consideration of other legal issues shall be without a presumption of correctness. § 25-5-81(e)(1), Ala. Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2), Ala. Code 1975. Our supreme court "has defined the term `substantial evidence,' as it is used in § 12-21-12(d), to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Industries, Inc., 680 So.2d 262,268 (Ala. 1996), quoting West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989). This court has also concluded: "The new Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v.Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App. 1995).
In April 1995, Fryfogle was employed part-time as a nurse at Springhill. In *Page 1257 
June 1995, she began working full-time. On July 14, 1995, Fryfogle was injured as she assisted a patient; she had been working at the hospital for 15 weeks. Fryfogle had surgery following her injury, and approximately two weeks later she complained of constant pain in her lower back and legs. She stated that sitting, walking, bending, lying down and cold and heat exacerbated her pain and that nothing seemed to relieve her pain.
Fryfogle has not been able to work since her accident. She contends that the court erred in determining that she was only 75% permanently partially disabled.
The court heard conflicting testimony with respect to Fryfogle's condition. At the time of trial, Fryfogle was under the care of Dr. Paul Atchison, an assistant professor of neurology at the University of Alabama at Birmingham School of Medicine. Dr. Atchison diagnosed Fryfogle as having reflex sympathetic dystrophy ("RSD").[1] He testified that he referred Fryfogle to Dr. Michael Stanton-Hicks and that following her treatment at Dr. Stanton-Hicks's clinic in Cleveland, Ohio, she "was no better off," because she still needed a wheelchair. He further stated that Fryfogle had reached maximum medical improvement before she was treated at the Cleveland clinic. Further, Dr. Atchison stated that he considers Fryfogle to be totally and permanently disabled.
When asked about Fryfogle's movements as shown by a surveillance video taken by Springhill's worker's compensation insurance carrier, Dr. Atchison stated that Fryfogle's movements as shown in the video were consistent with her reports that she could walk normally at times.
Dr. Rubin Timmons; pursuant to a request by Fryfogle's workers' compensation insurance carrier, examined Fryfogle in September 1996. He testified that Fryfogle's medical history indicated that she may have had RSD, but that at the time of his examination she did not have symptoms clinically consistent with RSD. He stated that, considering the amount of medication she was taking, he thought she could have a substance dependency. Dr. Timmons recommended that she complete a detoxification and rehabilitation program with aggressive therapy.
Dr. Stanton-Hicks, a pain medicine specialist, examined Fryfogle at his clinic in November 1996. He stated that for at least 12 months Fryfogle was permanently disabled because of RSD. He stated that he hoped to get Fryfogle to a point where she was not disabled and at a "level of function commensurate with an occupation."
Dr. Stanton-Hicks testified that Fryfogle did not complete her treatment, and he estimated that it would take approximately one year of rehabilitation to get her to "at least 70% return of function." He stated that if Fryfogle continued with a rehabilitation program she would eventually be able to return to. work. He further stated that he felt that he would be successful in getting Fryfogle to a point where she would not be permanently disabled.
The court also reviewed video surveillance of Fryfogle conducted in October 1996 and May 1997. The video depicted Fryfogle at times walking unaided (with and without shopping bags), driving, and using a wheelchair to get to a class. The court also heard testimony from several lay witnesses who testified that Fryfogle's physical condition had deteriorated following her injury.
The test for permanent total disability is the inability to find gainful employment: Bidermann Industries Corp. v. Peterson,655 So.2d 997, 1000 (Ala.Civ.App. 1994). Further, a "permanent total disability" is defined as including "any physical injury or mental impairment resulting from an accident, which injury or impairment permanently and totally incapacitates the employee from working at and being retrained for gainful employment." § 25-5-57(a)(4)(d), Ala. Code 1975; Alabama Catfish, Inc. v.James, 669 So.2d 917 (Ala.Civ.App. 1995). "Total disability" does not mean entire physical disability or absolute helplessness.Bidermann, supra. *Page 1258 
It is the duty of the trial court to make some determination as to the extent of disability. Id. In making the determination, the trial court must consider all the evidence, including its own observations, and interpret it to its own best judgment. Id. This court is precluded from weighing the evidence presented before the trial court. Edwards, supra. We merely examine the record to determine if the conclusion of the trial court is reasonably supported by the evidence, and, if so, whether the trial court has drawn the correct legal conclusions therefrom. LibertyTrousers v. King, 627 So.2d 422 (Ala.Civ.App. 1993). Based upon the record, we conclude that a reasonable view of the evidence supports the trial court's conclusion that Fryfogle suffered a 75% loss of wage-earning capacity.
Fryfogle next contends that the court erred in failing to consider her other employment when determining her average weekly wage. We disagree.
Section 25-5-57(b) provides that "[a]verage weekly earnings shall be based on the wages, as defined in Section 25-5-1(6), of the injured employee in the employment in which he or she was working at the time of the injury." At the time of her injury, Fryfogle was employed full-time as a nurse with Springhill. Fryfogle testified that she occasionally worked part-time at other facilities when she was not scheduled to work at Springhill. However, at the time of her injury she was working as a registered nurse at Springhill. The court correctly considered only the wages from Springhill, where Fryfogle was working at the time of the injury. See § 25-5-57(b); Henderson v. Johnson,632 So.2d 488 (Ala.Civ.App. 1993).
AFFIRMED.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] RSD means that there are several signs that a person may have debilitating, incapacitating pain. This is a vague type of pain that usually follows a traumatic event.