717 So.2d 406 (1998)
Betty EASTERLY
v.
BEAULIEU OF AMERICA, INC.
2970367
Court of Civil Appeals of Alabama.
May 22, 1998.
Rehearing Denied June 26, 1998.
*407 Jeffery W. McKinney of Siniard, Lamar & McKinney, P.C., Huntsville, for appellant.
D. Edward Starnes III and Jeffrey T. Kelly of Lanier Ford Shaver & Payne, P.C., Huntsville, for appellee.
WRIGHT, Retired Appellate Judge.
This is the second time that these parties have been before this court. Easterly v. Beaulieu of America, Inc., 703 So.2d 397 (Ala.Civ.App.1997) (Easterly I). In Easterly I, this court reversed the judgment of the trial court, finding that Easterly's discitis was not caused by her back injury. We remanded the case for a determination of Easterly's permanent partial or permanent total disability. For a full recitation of the facts see Easterly I, supra.
Following remand, the trial court entered a judgment, stating, in pertinent part:
"In the ... court's order dated 3 October 1995, the court indicated ... that there was some question as to [Easterly's] credibility. Since the ... court had found that, as a matter of law, [Easterly] was not entitled to compensation, the ... court did not address in depth the aspect of the credibility of [Easterly] in this case.
"[Easterly's] vocational expert testified that she relied on [Easterly's] assessment of her pain, which is a subjective observation, and that her opinion as to [Easterly's] disability was based on two factors: low back pain level and depression.
"The evidence before the court was replete with contradictions between [Easterly's] testimony and her sworn pleadings in the form of interrogatories and in her disagreement with the medical records produced in this matter as to her version of what she related to the doctors and what they wrote in their medical records. Additionally, Dr. Dyer, an orthopedic surgeon in Chattanooga, Tennessee, stated in a medical note dated 27 August 1991 that, `[Easterly] does not want to return to work.'
"This court must apply a subjective test as to [Easterly's] level of pain which she attributes to her back injury and her claimed inability to be gainfully employed. The court now finds that [Easterly] has suffered a compensable injury attributable *408 to the development of discitis in her lower back following necessary treatment by Dr. [James Stanford] Faulkner. Based upon its observation of [Easterly], [and] the inconsistencies between the medical records, the discovery documents, and the testimony of [Easterly] in this action, the court does not find [Easterly] to be suffering from the degree of pain which she attributes to this injury.
"Accordingly, the court finds that [Easterly] did suffer a compensable injury under the Alabama Workmen's Compensation Act while working for her employer on 24 June 1991 and that the effects of said injury were exacerbated by the development of the condition known as discitis, which was the result of the necessary treatment by Dr. Faulkner on [Easterly] pursuant to treatment of her original injury. The court further finds that [Easterly] has suffered a permanent partial disability and an attendant loss of earning capacity in the amount of 15% to the body as a whole."
The trial court awarded benefits accordingly.
Easterly appeals, contending that the trial court's findingthat she suffered a 15% permanent partial disabilityis not supported by a reasonable view of the evidence.
Easterly's injury occurred on June 24, 1991; therefore, the Workmen's Compensation Act is controlling. Initially, this court must determine if there is any legal evidence to support the trial court's findings; if such evidence is found, then this court must determine whether any reasonable view of that evidence supports the judgment of the trial court. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991).
Easterly argues that she is permanently and totally disabled and that the trial court's finding of a 15% permanent partial disability is not supported by any reasonable view of the evidence.
The test for permanent total disability is the inability to perform gainful employment. Bidermann Industries Corp. v. Peterson, 655 So.2d 997 (Ala.Civ.App.1994). Total disability does not mean entire physical disability or absolute helplessness. Id. It is the duty of the trial court to make some determination as to the extent of disability. Bidermann Indus Corp. In making the determination, the trial court must consider all the evidence, including its own observations, and interpret it to its best judgment. Id.
The record reveals the following pertinent facts: Beaulieu admitted that Easterly "suffered an injury that arose out of and in the course of her employment" and that it received timely notice of her accident and injury. Easterly worked for Beaulieu from 1988 until 1992, when she was fired. At the time of her injury, Easterly was a process technician, and she was attempting to move a 55-gallon drum from a pallet, when the drum shifted and fell on her. Easterly I. Easterly testified that her right wrist and her left leg immediately swelled and that her back and ribs began to hurt. Easterly sought treatment for her back pain.
Easterly initially saw Dr. J. Jay Rodriguez, who diagnosed her back pain as "musculoskeletal in nature" and prescribed certain pain medications. Dr. Rodriguez did not release Easterly to return to work. On her next visit, Dr. Rodriguez noticed muscle spasms in Easterly's back, but found no nerve root irritation. He arranged for Easterly to return to work on light-duty status, but restricted her from any prolonged standing, sitting, lifting, or any handling of objects over 20 pounds. However, Easterly's symptoms worsened, and she was admitted to the hospital, where tests were conducted. A CT scan and an MRI of Easterly's spine were normal, and Easterly was discharged from the hospital. Two days later, on Easterly's next visit, Dr. Rodriguez noted that Easterly had a "subcute lumbosacral strain" and injected medications into two "trigger points." Easterly continued to complain of low back pain.
Dr. Rodriguez released Easterly to return to light-duty work on August 28, 1991. Easterly returned to work in a control room; however, while she was working, Easterly's left leg collapsed, causing her to fall. Easterly left work early to seek treatment at an emergency room. On the following day, Easterly returned to Dr. Rodriguez, who injected *409 medication into a trigger point. Dr. Rodriguez did not release Easterly to return to work. Easterly continued to complain of back pain and to see Dr. Rodriguez. When Easterly's pain did not improve, Dr. Rodriguez referred her to a neurosurgeon, Dr. Peter Boehm. Dr. Rodriguez's final diagnosis of Easterly was "lumbar strain or lumbosacral pain" or "myofascial [pain] syndrome."
Dr. Boehm examined Easterly on September 12, 1991. He found as follows:
"[Easterly has] markedly diminished range of motion in the back because of pain principally going from the flexed [position] to the neutral [position]; that is, when I had her bend forward, she tolerated that reasonably well. But coming back up from that position to the point where she's standing upright, that caused a fairly significant amount of pain in her back."
Dr. Boehm diagnosed Easterly as having chronic lumbar strain and recommended that she lose weight and begin a vigorous exercise program. On Easterly's next visit, he noted that she showed mechanical back pain and that at the physical therapy clinic, she had a severe episode of muscle spasms. Easterly's muscle spasms lasted three to four days. Dr. Boehm increased Easterly's pain medication and prescribed a muscle relaxer. Easterly continued to experience pain and could not perform some of the exercises at the physical therapy clinic. Dr. Boehm eliminated those exercises from Easterly's physical therapy program. He found that she was moderately depressed and prescribed an antidepressant. Easterly next complained of back pain, swelling of her left knee, and swelling of her right wrist. Dr. Boehm's examination of Easterly revealed diminished forward flexion of her back.
Easterly returned to Dr. Boehm, complaining of severe pain in her back and pain radiating down both of her legs. Dr. Boehm's examination of Easterly revealed a decreased range of motion in her back, with pain in her lumbosacral area. He placed her on bed rest and prescribed a stronger pain medication. Easterly continued to complain of back pain and pain radiating down both legs. Dr. Boehm referred Easterly to Dr. David Connor, an osteopathic physician, to determine if he could decrease Easterly's pain. He also referred her to Dr. Odem, an orthopedic surgeon, for treatment of her right wrist problem. Dr. Boehm received reports from both doctors. Dr. Connor diagnosed Easterly with "sacroiliac and lumbar strain with left sciatica," and Dr. Odem diagnosed Easterly with carpal tunnel syndrome and performed a surgical release. Dr. Boehm's final diagnosis was back pain, which was musculoskeletal in nature.
Easterly was next treated by Dr. James Stanford Faulkner, an orthopedic surgeon, whose practice is limited to treatment of spinal disorders. Dr. Faulkner testified by deposition that Easterly complained of lower back and buttock pain. Dr. Faulkner examined Easterly and found that she had a decreased range of motion and tenderness in the "facet area." Dr. Faulkner performed several "facet" blocks on Easterly to relieve her pain, which proved unsuccessful. He next performed a "discogram," which is an injection of dye into the disc space at the lower three vertebrae. Dr. Faulkner took X-rays of Easterly's spine; the results of the discogram were normal on all three levels. Thereafter, Easterly returned to Dr. Faulkner, complaining of severe pain. Easterly was hospitalized. During Easterly's one month hospital stay, she received intravenous antibiotics for treatment of her discitis. Easterly received intravenous antibiotics for several months after her discharge from the hospital.
Dr. Faulkner continued to treat Easterly for back pain, occasionally admitting her to the hospital for pain control. He continuously prescribed pain medications, anti-inflammatory medications, and muscle relaxers, and he ordered extensive rehabilitation and therapy programs. To help Easterly deal with the stress of pain and with her physical limitations, Dr. Faulkner sent Easterly to a psychologist, Dr. Carol Walker.
Dr. Faulkner testified, two months before trial, that he had not released Easterly to return to work and that he recommended she continue physical therapy and psychological counseling. He also stated that Easterly was incapable of working, that he hoped she would be able to return to work sometime in *410 the future, but that he did not believe she could ever return to her previous job. Dr. Faulkner testified that he had not placed any restrictions on Easterly because he wanted her to be as active as possible to help resolve her back pain; however, if he were to place restrictions on Easterly, he would tell her to avoid bending, stooping, squatting, crawling, climbing, and prolonged standing. He further stated that he considered performing spinal fusion surgery on Easterly; however, he chose not to perform the surgery, because there was only a 50% chance that it would improve her condition. Dr. Faulkner testified that Easterly had been cooperative in her treatment and that he found her complaints of pain credible. He opined that Easterly had a physical impairment of 5% to 40%. Dr. Faulkner subsequently assigned Easterly a 24% permanent physical impairment.
Dr. Carol Walker, the psychologist specializing in neuropsychology, testified by deposition that she had been treating Easterly in psychotherapy to address her depression and to assist her in coping with her disability. Dr. Walker stated that Easterly was very depressed, because she could not work and could not engage in the activities that she and her husband had engaged in before her injury. She stated that Easterly's depression was mainly related to her pain and loss of function. Dr. Walker also stated that Easterly's physical condition and her ability to cope with that condition had improved. She further testified that Easterly had put a lot of effort into her recovery; Easterly had quit smoking and had lost 40-45 pounds as requested by Dr. Boehm. She also began an exercise program at the YMCA in order to lose more weight to become candidate for a spinal fusion.
Dr. Walker testified that she sees numerous "pain patients" and that she expects them to show that they have pain, i.e., if a person is hurting, he should not be able to sit still like most people. She stated that Easterly demonstrates pain behaviors but does not appear to be exaggerating her pain. Dr. Walker further stated that Easterly was willing to return, and would return, to work if she could. She also testified that Easterly will continue to have psychological difficulties and will not significantly improve unless there is some change in her pain status.
Patsy V. Bramlett, Easterly's vocational rehabilitation expert, testified that she interviewed Easterly, read Easterly's medical records, and read the depositions of Drs. Faulkner, Rodriguez, Boehm, and Walker. Bramlett also administered several tests to Easterly, which revealed that Easterly's I.Q. is in the below average range. Easterly reads at a high school level, and her spelling and mathematic abilities are at the 6th grade level. Bramlett stated that during the testing, Easterly had difficulty holding a pencil in her right hand, became emotionally upset, and had to stop and take a break.
Bramlett opined that based on Easterly's most recent treatment by Drs. Faulkner and Walker, and their assessment of Easterly's abilities, pain, and psychological difficulty, Easterly is unable to work and has no earning capacity. She further explained that she does not believe that Easterly is a candidate for other unskilled jobs because of Easterly's pain and psychological distress, particularly since Dr. Faulkner stated that Easterly had reached maximum medical improvement, but that he had not released her to seek employment.
A trial court is not bound by expert testimony and is free to accept or reject that testimony in reaching its decision, Malone v. ConAgra Poultry, Inc., 595 So.2d 897 (Ala. Civ.App.1992); however, a trial court cannot ignore the undisputed evidence. Tarver v. Diamond Rubber Products Co., 664 So.2d 207 (Ala.Civ.App.1994); Malone v. ConAgra Poultry, Inc., 595 So.2d 897 (Ala.Civ.App. 1992). Easterly presented undisputed evidence that she is unable to return to work at her former employment and that she is unable to seek or to perform other gainful employment. Therefore, we conclude that the trial court's finding of a 15% permanent partial disability is not supported by any legal evidence or any reasonable view of that evidence.
We recognize that great weight is due the trial court's findings of fact in a workers' compensation case. However, it is a well-settled principle of law that there must be *411 some reasonable support in the record for such findings. This court has carefully reviewed the evidence in the record on two appeals and cannot find any reasonable support for the judgment of the trial court as to the percentage of Easterly's loss of ability to earn. Whether Easterly is permanently totally disabled or has a reasonable permanent partial disability according to the evidence and the law remains for the determination of the trial court on remand.
Accordingly, we reverse the judgment of the trial court and remand the case to the trial court for entry of a judgment consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY and THOMPSON, JJ., dissent.
THOMPSON, Judge, dissenting.
It is clear that the majority, by remanding for the trial court to find Easterly permanently totally disabled or to enter a "reasonable permanent partial disability" award, is substituting its judgment for that of the trial court. I must respectfully dissent.
As I pointed out in my dissent in Easterly I, the record contains extensive evidence that calls Easterly's credibility into question. See Easterly v. Beaulieu of America, Inc., 703 So.2d 397 (Ala.Civ.App.1997) (Thompson, J., dissenting). The trial court noted the inconsistencies between Easterly's testimony and the pleadings and evidence. After observing Easterly in the courtroom, the trial court stated in its order that it "[did] not find [Easterly] to be suffering from the degree of pain which she attributes to this injury."
It is well settled that a trial court is not bound by the testimony and opinions of expert witnesses, even if that testimony is uncontroverted. Reed v. James R. Fincher Timber Co., 659 So.2d 660 (Ala.Civ.App. 1995); Knight v. NTN-Bower Corp., 607 So.2d 262 (Ala.Civ.App.1992); Rogers v. Chrysler Motors Corp., 587 So.2d 367 (Ala. Civ.App.1991); DeHart v. Ideal Basic Industries, Inc., 527 So.2d 136 (Ala.Civ.App.1988).
"A trial court is not bound to accept a physician's assigned impairment rating and is free to make its own determination as to an employee's impairment. Checker's Drive-In Restaurant v. Brock, 603 So.2d 1066 (Ala.Civ.App.1992). The impairment rating assigned by a physician is but one factor a court may consider in satisfying its duty to determine the extent of one's disability. The trial court has the duty to determine the extent of disability and is not bound by expert testimony in making that determination; yet, in making its determination, it must consider all the evidence, including its own observations, and it must interpret the evidence in accordance with its own best judgment. Wolfe v. Dunlop Tire Corp., 660 So.2d 1345 (Ala. Civ.App.1995). To hold that ... the trial court could not consider evidence of physical impairment, other than the physician's assigned impairment rating, would usurp the trial court's duty to determine disability and would place that duty solely in the hands of the physician."

Fuller v. BAMSI, Inc. 689 So.2d 128, 131 (Ala.Civ.App.1996) (emphasis added).
The trial court was free to make its own decision regarding the extent of Easterly's disability; it was not required to accept the disability ratings assigned to Easterly by the various experts. I find that a "reasonable view of the evidence support[s] the trial court's [judgment]." Ex parte Eastwood Foods, Inc., 575 So.2d 91, 95 (Ala.1991). I would affirm; therefore, I must respectfully dissent.
CRAWLEY, J., concurs.