[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 717 
Benny M. Green sued his employer, Scott Sanders, seeking workers' compensation benefits for injuries he sustained on January 3, 1994, when a 70-foot sweetgum tree fell and struck him on the head, the neck, and the back.
Following oral proceedings, the trial court entered a lengthy judgment, finding, among other things, that on January 3, 1994, a tree fell on Green, fracturing three of his thoracic vertebrae and rupturing one of his cervical discs; that Green is permanently and totally disabled; and that his injury arose out of and in the course of his employment. The trial court awarded benefits accordingly. The trial court taxed costs in the amount of $12,022.99 against the employer for experts' expenses and deposition expenses incurred by Green.
The employer appealed. This court, on Green's motion, remanded the case to the trial court. Following remand, the trial court held a hearing regarding Green's filing of expenses. The trial court amended the judgment, changing the costs taxed against the employer from $12,022.99 to $11,511.88. The trial court also supplemented the record on appeal.
The employer contends that the trial court erroneously awarded costs to Green; that Green failed to prove his average weekly wage, as required by § 25-5-57(b), Ala. Code 1975; that Green failed to lay the proper predicate for the opinions of his expert, Dr. Thomas Novack; that the trial court erred in admitting the opinion of Green's vocational expert; and that the trial court erred in finding Green to be permanently and totally disabled.
The standard of review of a workers' compensation case was stated by our supreme court in Ex parte Trinity Industries, Inc.,680 So.2d 262 (Ala. 1996):
 "[W]e will not reverse the trial court's finding of fact if that finding is supported by substantial evidence — if that finding is supported by `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'"
680 So.2d at 268-69 (quoting West v. Founders Life Assurance Co.,547 So.2d 870, 871 (Ala. 1989)). See also § 25-5-81(e), Ala. Code 1975.
Section 25-5-89, Ala. Code 1975, provides, in pertinent part, as follows:
 "Costs may be awarded by said court in its discretion, and, when so awarded, the same costs shall be allowed, taxed and collected as for like services and proceedings in civil cases . . . ."
Section 12-21-144, Ala. Code 1975, provides as follows
 "The costs of any deposition introduced, in whole or in part, into evidence at the trial by the party taking it shall be taxed as costs in the case upon the certificate of the person before whom the deposition was taken; the costs of depositions in other cases shall be taxed as costs in the case only if the court so directs."
"According to §§ 25-5-89 and 12-21-144, [Ala.] Code 1975, the taxing of costs in a case is within the discretion of the trial court, subject to the guideline of Rule 54(d), [Ala. R. Civ. P.]."; Littleton v. Gold Kist, Inc., 480 So.2d 1236, 1238
(Ala.Civ.App. 1985) (citation omitted). See also Ex parte Ellenburg,627 So.2d 398 (Ala. 1993). It is within the trial court's discretion to include expenses of expert witnesses in the taxation of costs pursuant to § 25-5-89. Universal ForestProducts v. Ellenburg, 627 So.2d 395 (Ala.Civ.App. 1992), rev'din part on other grounds, Ex parte Ellenburg.
Based on our review of the record, we conclude that the employer has failed to show that the trial court abused its discretion in the awarding of costs.
The employer contends that Green failed to establish his average weekly earnings in compliance with § 25-5-57(b), Ala. Code 1975. That section provides, in pertinent part, as follows: *Page 718 
 "Average weekly earnings shall be based on the wages, as defined in Section 25-5-1(6) of the injured employee in the employment in which he or she was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury divided by 52, but if the injured employee lost more than seven consecutive calendar days during the period, although not in the same week, then the earnings for the remainder of the 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts of thereof during which the employee earned wages shall be followed, provided results just and fair to both parties will thereby be obtained."
Green testified, and it is uncontroverted, that he worked for the employer for six months before the accident and that he was paid $300 per week. He also stated that in addition to the $300 per week, the employer paid him $200 per week in cash.[1] The record is devoid of any evidence that Green missed more than seven consecutive days of work before his injury. The trial court determined that Green was entitled to benefits of $200 per week, which equals 66 2/3% of his average weekly earnings. Therefore, we conclude that the trial court correctly determined Green's average weekly earnings.
Next, the employer contends that Green failed to lay the proper predicate for the opinions of his expert, Dr. Thomas Novack, a board certified neuropsychologist. However, the employer does not argue with any specificity how Green failed to lay the predicate for Dr. Novack's opinions.
Dr. Novack testified regarding his education, his experience, and his publications. Green also introduced into evidence a copy of Dr. Novack's curriculum vitae. Dr. Novack is an associate professor at the University of Alabama at Birmingham (UAB) Department of Physical Medicine and Rehabilitation and Department of Psychology. He also works at UAB's Spain Rehabilitation Center. He has written over 25 manuscripts about closed head trauma and also has treated thousands of patients with closed head traumas.
Dr. Novack testified regarding the 20 tests that he administered to Green; the recognition and acceptance of these tests in the neuropsychology community; the method of interpreting the test results; the results of Green's tests; and his opinions based on the test results. The employer's attorney thoroughly cross-examined Dr. Novack. The trial court found Dr. Novack's testimony and credentials to be credible.
Therefore, we conclude that Green laid the predicate for Dr. Novack's testimony. However, we recognize that the trial court is not bound by expert testimony. Malone v. ConAgra Poultry, Inc.,595 So.2d 897 (Ala.Civ.App. 1992). Accordingly, we find no error.
The employer next contends that the trial court erred in admitting the testimony of Green's vocational expert, because, it says, the expert's opinions were based on opinions of Dr. Novack that were not introduced into evidence.
Marilyn Oakes, who is a licensed professional counselor, a vocational rehabilitation expert, and a certified pain practitioner, interviewed Green and performed a vocational evaluation of Green. In forming her opinions, Oakes reviewed Green's medical records; his functional capacities evaluation; the Dictionary of Occupational Titles; Dr. Novack's deposition; and Dr. Barth's deposition. Dr. Novack's deposition was not introduced into evidence. However, when we compare Dr. Novack's testimony to Oakes's recitation of Dr. Novack's deposition testimony, we conclude that Dr. Novack's trial testimony was substantially the same as his deposition testimony. Therefore, we find no error. *Page 719 
Last, the employer contends that the trial court erred in finding Green to be permanently and totally disabled.
The test for permanent total disability is the inability to perform gainful employment. Bidermann Industries Corp. v.Peterson, 655 So.2d 997 (Ala.Civ.App. 1994). Total disability does not mean entire physical disability or absolute helplessness. Id. It is the duty of the trial court to make some determination as to the extent of disability. Bidermann. In making the determination, the trial court must consider all the evidence, including its own observations, and interpret it to its own best judgment. Id.
Green testified that on several occasions since his injury, he has tried to work at his mother's restaurant, but he has to lie down for approximately two to three hours after working for one and one-half hours. He also stated that he had sought employment, but no one would hire him. Green testified that he has pain in his neck, his shoulders, and his back; that he has decreased strength in his left hand; and that he suffers memory loss and depression. Both Green's wife and his mother testified that Green is in constant pain, that he is not the same person he was before his injury, and that he is moody. Green's mother also stated that when she sent Green into the stockroom of her restaurant to do an inventory and to stock supplies, he was unable to stock supplies or to complete an inventory. She further testified that because she is so worried about Green's physical and mental condition, she gets him to come to her restaurant everyday in order to keep an eye on Green, and that he lies down in her office for two to three hours everyday.
Dr. Robert Barth, a neuropsychologist and the employer's expert, testified that he interviewed and administered tests to Green. He stated that Green's test results were more consistent with malingering than with a closed head trauma. On cross-examination, Dr. Barth stated that he administered five tests to Green, that the results of four of those tests indicated that Green was not malingering, and that the fifth test did not apply to a person unless he or she had lower back pain. The evidence reveals that Green had not complained of lower back pain — his injuries were to his head, his neck, and his mid-back.
John M. Long, Jr., a vocational rehabilitation consultant and another of the employer's experts, testified that he had done a job analysis to identify jobs available to Green. He reviewed Green's functional capacities evaluations and the deposition of Green's treating physician. Long determined that Green had a 35 to 45% loss of access to jobs and a 30 to 43% loss of earning capacity. Long testified that he called a factory in Brundidge, where they identified 28 jobs that Green could perform. On cross-examination, Long admitted that he did not specifically tell the prospective employer of Green's physical limitations and restrictions. He also admitted that his one call was the extent of his job search. We find no error.
The judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e), Ala. Code 1975.
AFFIRMED.
ROBERTSON, P.J., and YATES and THOMPSON, JJ., concur.
MONROE, J., concurs in the result.
CRAWLEY, J., recused.
[1] In deposition, Green admitted that, at the time of his injury, his average weekly wage was $300. He did not mention a $200 per week cash payment. Apparently, the trial court did not include the $200 per week cash payment in its calculation of Green's average weekly wage.