Nevada Easley appeals from the judgment of the trial court awarding her permanent-partial-disability benefits for her work-related injuries. We affirm in part, reverse in part, and remand.
Easley sued her employer, the Huntsville-Madison County Public Library ("the Library"), seeking to recover workers' compensation benefits. Easley worked for the Library as a branch librarian. On January 19, 2004, Easley injured her left arm in an accident while emptying a book-return bin at work. After the accident, Easley experienced persistent pain in her left arm, missed several weeks of work, and underwent physical therapy.
Easley was eventually treated by Dr. Stanton Davis, an orthopedic surgeon. Dr. Davis diagnosed Easley as having a partial tear of her left biceps. In July 2004, Dr. Davis restricted Easley to lifting no more than 10 pounds with her left arm and to working 20 hours per week. Easley continued to undergo physical therapy on her left arm. Dr. Davis opined that Easley reached maximum medical improvement for her left-arm injury on August 23, 2004.
In January 2005, Easley returned to Dr. Davis, complaining of pain in her right shoulder. Dr. Davis concluded that Easley suffered from impingement of the right shoulder. In Dr. Davis's opinion, Easley's right-shoulder injury resulted from her overcompensating with her right arm for her left-arm injury. Easley underwent physical therapy on her right shoulder. Dr. Davis concluded that Easley reached maximum medical improvement for her right-shoulder injury on April 13, 2005. Due to Easley's injures to her left arm and right shoulder, Dr. Davis ultimately restricted Easley to 20 hours per week of "sedentary work," which consisted of "only paperwork and no overhead activity."
In June 2005, Easley submitted a resignation notice to the Library. In the notice, Easley stated that she was unable to continue her employment with the Library because of the pain and limitations caused by her work-related injuries. On July 8, 2005, the Library accepted Easley's resignation. On September 18, 2005, the Library held a retirement reception for Easley. A videotape of the reception was submitted into evidence at trial. In its judgment, the trial court found that the videotape indicated none of the "`facial grimacing' or other pain behavior or limitations" noted by Dr. Davis in his examinations of Easley. Easley testified that she acted the same way at the reception as she would on any other day. After reviewing the videotape, Dr. Davis testified that Easley's actions at the reception were consistent with the restrictions he had placed on her.
Easley was 77 years old at the time of her accident in January 2004, and she was 80 years old at the time of the trial. Easley worked for the Library for more than 40 years, primarily as a branch librarian. Easley testified that she graduated high school and attended college for one year. *Page 518 
Easley's job duties as a branch librarian included being responsible for the materials and equipment at the branch library; supervising and training personnel; overseeing the development of the collection at the branch, including reading book reviews and selecting new books to be ordered; answering patrons' questions; planning and promoting special activities for children and adults; maintaining circulation statistics; accounting for all money received at the branch; and conducting other duties involving the efficient operation of the branch, including shelving books, emptying the book-return bin, and helping to keep the premises in a clean condition. Easley testified that she had prepared the budget for her library branch. Donna Schremser, the Library's executive director, testified at trial that a branch librarian's duties are typically more intellectual than physical.
John McKinney, a vocational expert, testified at trial for Easley. McKinney interviewed Easley, reviewed her medical records, and administered an aptitude test to Easley. McKinney testified that Easley's test results indicate that she reads at an eighth-grade level, spells at a fifth-grade level, and performs mathematical computations at a third-grade level. McKinney opined that Easley is 100% vocationally disabled as a result of her work-related injuries.
Easley testified that she disagreed with the results of McKinney's aptitude test. Schremser testified that someone possessing the aptitude indicated by Easley's test results could not have performed the duties of a branch librarian. Schremser stated that the aptitude-test results greatly underestimated Easley's actual intellectual abilities.
Russ Gurley, a vocational expert, testified at trial for the Library. Gurley interviewed Easley and reviewed her medical records. Gurley testified that Easley is capable of working as a receptionist, switchboard operator, hotel desk clerk, and night auditor. Gurley also testified that Easley could perform some customer-service work and some clerical work. Gurley opined that, based on Easley's demonstrated abilities and the restrictions placed on her by Dr. Davis, Easley is 50%-60% vocationally disabled as a result of her work-related injuries.
Easley testified that she experiences constant pain in both her left arm and her right shoulder. Easley further testified that she takes anti-inflammatory medication for her pain. Easley stated that, after her work-related injuries, she can no longer clean her house, needs assistance carrying groceries, and has difficulty sleeping.
The trial court entered a judgment awarding Easley permanent-partial-disability benefits based on the trial court's finding that she had sustained an 80% loss of ability to earn due to her work-related injuries.[1] The trial court's judgment also awarded the Library a credit for disability payments previously made by the Library to Easley. The trial court applied that credit against the accrued permanent-partial-disability *Page 519 
benefits due Easley. Easley timely appealed.
 "When this court reviews a trial court's factual findings in a workers' compensation case, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2), Ala. Code 1975. Substantial evidence is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). Further, this court reviews the facts `in the light most favorable to the findings of the trial court.' Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App. 1994), overruled on other grounds, Ex parte Trinity Indus., Inc., 680 So.2d 262 (Ala. 1996). This court has also concluded: `The [1992 Workers' Compensation] Act did not alter the rule that this court does not weigh the evidence before the trial court.' Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014
(Ala.Civ.App. 1995). However, our review as to purely legal issues is without a presumption of correctness. See Holy Family Catholic School v. Boley, 847 So.2d 371, 374 (Ala.Civ.App. 2002) (citing § 25-5-81(e)(1), Ala. Code 1975)."
Reeves Rubber, Inc. v. Wallace, 912 So.2d 274, 279
(Ala.Civ.App. 2005).
 "The test for permanent total disability is the inability to find gainful employment. Bidermann Industries Corp. v. Peterson, 655 So.2d 997, 1000
(Ala.Civ.App. 1994). Further, a `permanent total disability' is defined as including `any physical injury or mental impairment resulting from an accident, which injury or impairment permanently and totally incapacitates the employee from working at and being retrained for gainful employment.' § 25-5-57(a)(4)(d), Ala. Code 1975; Alabama Catfish, Inc. v. James, 669 So.2d 917 (Ala.Civ.App. 1995). `Total disability' does not mean entire physical disability or absolute helplessness. Bidermann, supra. It is the duty of the trial court to make some determination as to the extent of disability. Id. In making the determination, the trial court must consider all the evidence, including its own observations, and interpret it to its own best judgment. Id."
Fryfogle v. Springhill Mem'l Hosp., Inc.,742 So.2d 1255, 1257-58 (Ala.Civ.App. 1998).
On appeal, Easley argues that the trial court erred in not finding that she is permanently and totally disabled as a result of her work-related injuries. However, there is substantial evidence supporting the trial court's finding that Easley suffered an 80% permanent partial disability. "[T]he trial court in a workers' compensation case has considerable discretion in determining an employee's percentage of disability or loss of earning ability." Williams v. LeeApparel Co., 610 So.2d 410, 412 (Ala.Civ.App. 1992). The trial court observed Easley's testimony and demeanor at trial and observed her behavior on the videotape of her retirement reception. In its judgment, the trial court found that the videotape indicated none of the "pain behavior or limitations" noted by Dr. Davis in his examinations of Easley. There was also evidence submitted indicating that Easley's long-time job as a branch librarian required her to exercise predominantly mental skills. This evidence supports a finding that Easley's physical restrictions did not render her totally disabled. Russ Gurley, the Library's vocational expert, testified that Easley is 50%-60% vocationally disabled. Gurley testified that Easley is capable of working several jobs given her qualifications and restrictions. *Page 520 
Easley contends that the trial court erred in relying on Gurley's opinions regarding her disability because, Easley says, those opinions were based on speculation and conjecture. We note that the trial court found that Easley is 80% permanently partially disabled and that Gurley opined that Easley is only 50%-60% vocationally disabled. In determining an employee's degree of disability, the trial court is not bound by the opinions of expert witness. Rogers v. ChryslerMotors Corp., 587 So.2d 367, 370 (Ala.Civ.App. 1991). Although Easley would have this court discount Gurley's opinion in our review of the trial court's judgment, "[t]his court's role is not to reweigh the evidence, but to affirm the judgment of the trial court if its findings are supported by substantial evidence and, if so, if the correct legal conclusions are drawn therefrom." Bostrom Seating, Inc. v. Adderhold,852 So.2d 784, 794 (Ala.Civ.App. 2002). As we have noted, the trial court's finding of an 80% permanent partial disability is supported by substantial evidence.
Easley also argues that the trial court erred in applying prejudgment disability payments made by the Library as a credit against accrued permanent-partial-disability benefits owed to Easley. Easley cites no authority for this argument. "`Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor [our] function to perform all the legal research for an appellant.'" Henderson v. Alabama A MUniv., 483 So.2d 392, 392 (Ala. 1986) (quoting Gibsonv. Nix, 460 So.2d 1346, 1347 (Ala.Civ.App. 1984)). Moreover, this court has stated:
 "Our review of the Work[ers'] Compensation Act reveals nothing barring a credit for advance payments of permanent partial disability benefits. Although no section of the Act specifically provides for an employer to be given credit for permanent partial disability benefits paid prior to a trial court's judgment, the Act appears to favor the payment of benefits prior to litigation."
Gold Kist, Inc. v. Mullinax, 650 So.2d 937, 939
(Ala.Civ.App. 1994). Accordingly, the trial court did not err in awarding the credit against the accrued benefits.
Easley also argues that the trial court, in calculating Easley's benefits, omitted permanent-partial-disability benefits that accrued between February 10, 2005, and July 8, 2005. Before that period, Easley had reached maximum medical improvement for her left-arm injury. The Library concedes that the trial court should have awarded Easley accrued permanent-partial-disability benefits for that period. This omission by the trial court appears to be an obvious error.
Insofar as the judgment of the trial court failed to award Easley accrued permanent-partial-disability benefits for the period between February 10, 2005, and July 8, 2005, we reverse the judgment, and we remand the case. In all other respects, we affirm the judgment.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
[1] In its judgment, the trial court concluded that Easley's right-shoulder injury was a "natural consequence" of her left-arm injury and that Easley's right-shoulder injury fell outside the schedule found in § 25-5-57(a)(3), Ala. Code 1975. See Werner Co. v. Williams,871 So.2d 845, 855 (Ala.Civ.App. 2003) (stating that an injury to the shoulder is not an injury to the arm, which is compensated pursuant to the schedule). The trial court also concluded that Easley's left-arm injury and right-shoulder injury should be treated as injuries to the body as a whole, pursuant to Exparte Drummond Co., 837 So.2d 831 (Ala. 2002). The correctness of those conclusions are not challenged on appeal.