THOMPSON, Presiding Judge.
 

 Steam
 
 &
 
 Process Repairs (“S & P”) appeals from the trial court’s judgment in this workers’ compensation action. In its appeal, S & P contends that the trial court erred in the way it gave credit to S & P for temporary-total-disability payments S
 
 &
 
 P made to employee Michael V. Cayton after Cayton had reached maximum medical improvement (“MMI”).
 

 The pertinent facts are as follows. From May 22, 2004, to April 18, 2008, S
 
 &
 
 P voluntarily paid Cayton $513.54 a week in temporary-total-disability benefits for a back injury Cayton had sustained in a work-related accident. Most of the weekly payments were made while this matter was being litigated. In its judgment, the trial court determined that Cayton had sustained a 75% permanent partial disability as a result of the injury and that he had reached MMI on April 4, 2006. The trial court also found that S & P was entitled to a credit “to the extent that benefits paid for temporary total disability after the date of maximum medical improvement exceeded benefits due for permanent partial disability.” The trial court directed the parties to confer to determine the amount of compensation owed to Cayton in light of the credit due to S & P.
 

 S
 
 &
 
 P argued that it was entitled to a credit in the form of a reduction in payment equal to the actual dollar amount it had overpaid Cayton after he had reached MMI. Cayton argued that S & P was entitled to credit in the form of a deduction of the number of weeks it had paid Cayton temporary-total-disability benefits from the total number of weeks Cayton was entitled to receive permanent-partial-disability benefits. The parties’ respective methods of calculation are discussed more fully below. The parties were unable to agree on the amount of compensation owed. They returned to the trial court to resolve the issue. After a hearing, the trial court entered an amended order finding that S & P had paid Cayton temporary-total-disability benefits for 204 weeks and that Cayton was entitled to receive permanent-partial-disability benefits for 300 weeks pursuant to § 25-5-57(a)(3)g., Ala.Code 1975. The trial court gave S & P credit for the number of weeks it had already paid benefits to Cayton and ordered it to pay the $220 a week Cayton was entitled to receive in permanent-partial-disability benefits for the remaining 96 weeks.
 

 On appeal, S & P argues that the trial court should have awarded it a monetary credit for the amount of money it had overpaid Cayton rather than credit for the time those overpayments were made, i.e., credit for the number of weeks S & P had made the overpayments. S & P bases its contention on § 25-5-56, AIa.Code 1975, which states, in pertinent part:
 

 
 *698
 
 “All moneys voluntarily paid by the employer or insurance carrier to an injured employee in advance of agreement or award shall be treated as advance payments on account of the compensation. In order to encourage advance payments, it is expressly provided that the payments shall not be construed as an admission of liability but shall be without prejudice.”
 

 Cayton contends that § 25-5-56 is inapplicable because it deals only with cases involving a settlement between the parties. Instead, he says, § 25-5-57(a)(3)g., Ala. Code 1975 governs the method of the calculation of the credit in this case. Section 25-5-57(a)(3)g. provides, in pertinent part:
 

 “If a permanent partial disability, compensation for which is not calculated by use of the schedule in subdivision (a)(3) of this section, follows a period of temporary total disability resulting from the same injury, the number of weeks of the temporary total disability shall be deducted from the number of weeks payable for the permanent partial disability.”
 

 Section 25-5-57(a)(3)g. does not encompass situations in which there has been an overpayment of temporary-total-disability benefits. It simply allows an employer to deduct the time the employee is entitled to receive temporary-total-disability benefits from the total number of weeks an injured employee is entitled to receive benefits for a permanent partial disability.
 

 “Our review of the Workmen’s Compensation Act reveals nothing barring a credit for advance payments of permanent partial disability benefits. Although no section of the Act specifically provides for an employer to be given credit for permanent partial disability benefits paid prior to a trial court’s judgment, the Act appears to favor the payment of benefits prior to litigation. ...
 

 [[Image here]]
 

 “This court has interpreted § 25-5-56 as intended ‘to encourage the employer ... to make advance payments to the disabled employee without waiting for a determination of the question of liability, the length of disability, or the extent of the injuries.... [I]f the employer were [sic] not insured the employer may take credit for voluntary advance payments against the amount of ultimate liability.’
 
 March v. City of Huntsville,
 
 45 Ala.App. 480, 483, 232 So.2d 662, 664 (Civ.App.1970).”
 

 Gold Kist, Inc. v. Mullinax,
 
 650 So.2d 937, 939 (Ala.Civ.App.1994)(footnote omitted).
 

 In
 
 Mullinax,
 
 this court explained the rationale behind allowing an employer to receive a monetary credit for advance payments of permanent-partial-disability benefits.
 

 “The workers’] compensation laws are to be liberally construed in favor of the injured employee. To disallow credit for advance payment of permanent partial disability, as in this case, is contrary to the legislative intent of § 25-5-56, which encourages employers to make advance payments during the period between the accident and the determination of liability and the extent of the injury. This interpretation of § 25-5-56 favors the employee by encouraging employers to make payments to the injured employee while waiting, if necessary, for a court determination regarding liability and benefits due. The disallowance of credit for advance payments for permanent partial disability would, in all likelihood, discourage advance payments.”
 

 Id.
 

 In
 
 Hedgemon v. United Parcel Service, Inc.,
 
 832 So.2d 656, 661 (Ala.Civ.App.2002), this court, while addressing the issue
 
 *699
 
 whether an employer had the right to
 
 recoup
 
 overpayment of benefits, recognized the employer’s right to receive a
 
 credit
 
 for overpayment of benefits, stating:
 

 “[T]he
 
 Mullinax
 
 court rightly recognized that, in order to make an award of future benefit payments to an employee that would result in the employee’s receiving the correct total amount of benefits to which he or she was entitled under the terms of the [Workers’ Compensation] Act, it obviously had to allow a credit for all similar payments made in advance of the trial court’s judgment.
 
 Mullinax,
 
 650 So.2d at 939.”
 

 See also Easley v. Huntsville-Madison County Pub. Library,
 
 977 So.2d 516, 520 (Ala.Civ.App.2007) (affirming judgment awarding an employer a monetary credit for prejudgment disability payments it had made to its injured employee and applying credit against the accrued permanent-partial-disability benefits owed the employee).
 

 In this case, S & P paid Cayton $513.34 a week for 98 weeks before he reached MMI and for an additional 106 weeks after he reached MMI. The trial court determined that Cayton was to receive $220 each week in permanent-partial-disability benefits. Payment of permanent-partial-disability benefits should have begun when Cayton reached MMI.
 
 Fort James Operating Co. v. Stephens,
 
 996 So.2d 833, 840 (Ala.2008) (for an employee to receive permanent-partial- or permanent-total-disability benefits, the employee must have reached MMI (citing
 
 Ex parte Phenix Rental Ctr.,
 
 873 So.2d 226 (Ala.2003))). Therefore, from the time Cayton reached MMI, S & P overpaid him $293.54 each week for 106 weeks for a total overpayment of $31,115.24.
 

 Based upon the authorities cited above, 5 & P should have received a credit for those overpayments. The credit should have been applied to the permanent-partial-disability benefits of $220 each week for the 96 weeks remaining of the total of 300 weeks Cayton was entitled to compensation pursuant to § 25-5-57(a)(3)g.
 
 [1]
 
 At a rate of $220 each week for 96 weeks, S & P owed Cayton a total of $21,120 in permanent-partial-disability benefits. Once S & P is credited with the $31,115.24 it had already overpaid Cayton during the 106 weeks after Cayton reached MMI, however, S & P will owe Cayton no further compensation, because S & P has paid $9,995.24 more than Cayton is entitled to recover from S & P. The issue whether S 6 P is entitled to recoup that amount is not before this court.
 

 For the reasons set forth above, the judgment of the trial court allowing S & P a credit for the number of weeks it had overpaid Cayton, but not for the amount of the overpayment, is due to be reversed, and the cause is remanded for the entry of a judgment consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . The 98 weeks Cayton received temporaiy-total-disability benefits, plus the 106 weeks Cayton received the overpayments, equals 204 weeks of compensation. After deducting the 204 weeks for which Cayton had already received compensation from the 300 weeks he was entitled to receive compensation, Cayton was entitled to receive compensation for 96 more weeks at a rate of $220 each week.