Helen Cooper filed a complaint against her former employer, Seven Rivers, Inc., in the Baldwin County Circuit Court, seeking workmen's compensation benefits. Cooper alleged that on July 5, 1992, she was injured in an accident arising out of and in the course of her employment. Following oral proceedings, the trial court entered a judgment, finding that Cooper injured her right arm, left buttocks, and left leg in a fall on July 5, 1992; that Cooper developed polymyositis; *Page 885 
and that Cooper's polymyositis was not caused by her accident. The trial court also found that Cooper has a 46.5% permanent partial disability and that her average weekly wage had been $331.57. The trial court further found that Cooper had received 15 weeks of temporary total disability benefits, that she was entitled to 91 weeks of accrued permanent partial disability benefits, and that she was entitled to 194 weeks of future permanent partial disability benefits.
Cooper appeals, contending that the trial court's findings are meager and omissive, that the trial court erred in finding that her polymyositis was not caused or contributed to by her accident, that the trial court erred in calculating her average weekly wage, that the trial court erred in determining the period of her temporary total disability, and that the trial court erred in not finding her 100% disabled.
Cooper's injury occurred on July 5, 1992; therefore, the old standard of review applies. In a workmen's compensation case, this court's review is limited to a determination of whether there is any legal evidence to support the trial court's conclusions. Ex parte Eastwood Foods, Inc., 575 So.2d 91
(Ala. 1991). If a reasonable view of the evidence supports the judgment of the trial court, this court must affirm that judgment, even though a better reasoned view of the evidence dictates a different result. Ex parte Veazey, 637 So.2d 1348
(Ala. 1993).
Cooper argues that the trial court's judgment is not sufficiently detailed and that its findings are omissive and incorrect.
It is the duty of the trial court to make sufficient findings of fact to enable the appellate court to determine whether the trial court's judgment is supported by legal evidence. M HValve Co. v. Carmichael, 607 So.2d 224 (Ala.Civ.App. 1991). However, if the trial court's findings of fact are meager or omissive, this court may refer to the record to determine whether the trial court's judgment should be upheld. Id. In this case we find that the trial court's judgment contains sufficient details to indicate that its findings are based on the legal evidence. Therefore, we find no error.
Cooper next argues that the trial court erred in finding that her accident did not cause or contribute to her polymyositis.
Dr. Daniel A. Polansky, an internist and hematologist, testified by deposition that he diagnosed Cooper with polymyositis, an autoimmune disease or a nonspecific inflammation of the muscles. He also testified that Cooper's polymyositis caused an inflammation of the muscles around her spinal tissues, pain in her left leg, and swelling in her left foot. Dr. Polansky further testified that he did not know whether Cooper's polymyositis preexisted the July 5, 1992, accident and that there "is one line in the textbook that says that sometimes falls or trauma can induce polymyositis." He also testified that he wrote a letter, stating that there was no relationship between Cooper's accident and the polymyositis and that, although trauma can precipitate or worsen the symptoms, trauma does not cause polymyositis.
In workmen's compensation cases, the trial court determines the weight to be given the testimony, and its findings on conflicting testimony are conclusive where there is any evidence to support its conclusions. Blue Circle, Inc. v.Williams, 579 So.2d 630 (Ala.Civ.App. 1991). Moreover, the trial court is not bound by expert testimony. Malone v. ConAgraPoultry, Inc., 595 So.2d 897 (Ala.Civ.App. 1992). Based on our review of the record, we conclude that the trial court's finding, that Cooper's polymyositis was not caused by her accident, is supported by legal evidence.
Cooper also argues that the trial court erred in calculating her average weekly wage. Section 25-5-57(b), Ala. Code 1975, provides, in pertinent part:
 "Average weekly earnings shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury divided by 52, but if the injured employee lost more than seven consecutive calendar days during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of *Page 886 weeks remaining after the time so lost has been deducted. . . . Whatever allowances of any character made to an employee in lieu of wages [that] are specified as part of the wage contract shall be deemed a part of his earnings."
(Emphasis added.) It is mandatory that the trial court use this formula when the claimant of workmen's compensation benefits has worked for the same employer for 52 weeks preceding his or her injury. Ingram v. Brookwood Health Services, Inc.,651 So.2d 24 (Ala.Civ.App. 1994). Additionally, our supreme court has held that under § 25-5-57(b), employer-paid fringe benefits "constitute 'allowances of any character' and are includable in the computation of the employee's average weekly wage." Exparte Murray, 490 So.2d 1238, 1241 (Ala. 1986). However, the claimant bears the burden of proving what the average weekly earnings were. Shields v. GTI Corp., 607 So.2d 253
(Ala.Civ.App. 1992).
Cooper testified that in 1992 she worked at the Pier 4 restaurant owned and operated by Seven Rivers; that when the accident occurred, she earned $10 per hour; that she worked at least 36-37 hours per week; and that she usually worked 42-44 hours per week. She also testified that Seven Rivers paid her a weekly sum, separate from her paycheck, to enable her to purchase health insurance. Constantino D. Rivanos, the former general manager of the Pier 4 restaurant, testified that on July 5, 1992, Cooper earned $10 per hour, that she was a managerial employee and did not clock in, and that Cooper was paid a weekly sum to enable her to purchase health insurance. He also testified that there were payroll journals that would show the hours that Cooper had worked.
Dale Greenstein, the manager of the Pier 4 restaurant, testified that in order to calculate Cooper's average weekly wage for the 52 weeks preceding her July 5, 1992, injury, he had reviewed the corporate records of Seven Rivers. He testified that he had calculated her average weekly wage by adding together her quarterly earnings and dividing by 52 and that her average weekly wage had been $331.57. Greenstein further testified that Cooper was also paid a separate monthly sum to enable her to purchase health insurance. Therefore, we conclude that the trial court erred in not including Cooper's fringe benefits in her average weekly wage.
Cooper further argues that she should have received temporary total disability benefits from April 5, 1993, the date of her last temporary total disability payment, until July 12, 1994, the date she reached maximum medical improvement. Temporary total disability refers to the period during which the employee is healing and unable to work. Ex parte Moncrief, 627 So.2d 385
(Ala. 1993).
Dr. James West, III, an orthopedic surgeon, testified by deposition that he treated Cooper for her back, left leg, and right shoulder injuries. He testified that Cooper reached maximum medical improvement on July 12, 1994, and that her inability to work was related to her polymyositis and was not related to her back problems. The record reflects that in January 1993, Cooper developed the symptoms that were ultimately diagnosed as polymyositis and that Cooper returned to work in March 1993, but was unable to work more than a few days because of severe pain in her left leg and foot. Dr. West testified that Cooper's left leg and foot pain were not related to her July 5, 1992, injuries. Consequently, we conclude that the trial court was correct in holding that Cooper was not entitled to temporary total disability benefits for the period of April 5, 1993, through July 12, 1994.
Last, Cooper argues that she is 100% disabled and that the trial court erred in assigning her a 46.5% permanent partial disability. The test for permanent total disability is the inability to find gainful employment. Bidermann IndustriesCorp. v. Peterson, 655 So.2d 997 (Ala.Civ.App. 1994). Total disability does not mean entire physical disability or absolute helplessness. Id. It is the duty of the trial court to make some determination as to the extent of disability. Genpak Corp.v. Gibson, 534 So.2d 312 (Ala.Civ.App. 1988). In making that determination, the trial court must consider all the evidence, including its own observations, and *Page 887 
interpret it to its own best judgment. Genpak.
Dr. West testified that, without polymyositis, Cooper could return to her employment and work an eight-hour day, with modified duty. He also testified that, without considering her polymyositis, he assigned Copper a 4% impairment rating to the body as a whole. Although Cooper's vocational expert, Theresa Hamby, testified that Cooper had a 100% loss of access to jobs, Hamby did not distinguish Cooper's injury problems from her polymyositis problems. In reviewing the record with the attendant presumptions, we find that a reasonable view of the evidence supports the trial court's discretionary finding that Cooper has a 46.5% permanent partial disability.
We affirm those portions of the trial court's judgment finding that Cooper's polymyositis was not caused by her July 5, 1992, injuries, awarding Cooper 15 weeks of temporary total disability benefits, and assigning her a 46.5% permanent partial disability. We reverse that portion of the judgment finding Cooper's average weekly wage to be $331.57, and we remand the cause for the inclusion of her fringe benefits in the calculation of her average weekly wage.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
All the judges concur.