James River Corporation appeals from a Choctaw Circuit Court's judgment determining that Melvin Franklin sustained a permanent total disability from alleged back injuries suffered by Franklin while he was employed by James River.
According to the trial court's judgment, Franklin suffered a herniated disc in his back while at work on September 4, 1994. He underwent surgery and was eventually able to return to work in December 1994. While at work in July 1995, however, Franklin injured his back again, suffering a "recurrent herniation." For several months thereafter, Franklin attempted on several occasions, without success, to return to work.
In January 1996, Franklin sued James River, alleging that he was entitled to workers' compensation benefits for injuries to his lower back he allegedly sustained while working at James River's mill in Naheola. Franklin had been employed by James River, or its predecessor, American Can Company, since 1972. Franklin's case was originally set for hearing in December 1997. However, when Franklin and James River appeared for that hearing, they entered into a settlement agreement. In that agreement, James River acknowledged that Franklin had injured his back at work in September 1994 and July 1995; agreed that the Workers' Compensation Act applied to Franklin's claim; agreed that James River had received notice of the accident that caused Franklin's injuries; agreed to pay Franklin total disability benefits through December 1997; and agreed to continue paying Franklin total disability benefits in the future pending the results of treatment by Dr. Kenneth Staggs and possible surgery to be performed by Dr. Orhan Ilercil. The parties apparently believed that the treatments and a second surgery might result in Franklin's being able to return to work.
In March 1998, Dr. Ilercil performed the second surgery on Franklin's back. After this surgery, Franklin attempted to perform the job of a machine inspector at James River. However, Franklin alleged that after six days on the job he was not able to continue working because of the pain and the limitations associated with his back injury. James River did not contact Franklin regarding additional work until April 2000, when it informed him that it had another job opening for a machine inspector. Franklin received the notice of the new job opening a few days after the trial court had set his case for a hearing *Page 166 
regarding whether Franklin was permanently disabled.
In May 2000, the trial court held a hearing regarding whether Franklin had suffered a permanent total disability. The trial court entered a judgment in April 2001 in which it concluded that Franklin had suffered a permanent total disability, and it awarded him permanent total disability benefits. James River appeals, arguing that the trial court erred because, it says, the trial court considered a deposition and an exhibit to a deposition that had not been admitted into evidence; because, it says, the trial court's finding that Franklin suffered a permanent total disability was not supported by substantial evidence; and because, it says, the trial court's award of attorney's fees to Franklin's attorney would require James River to make payments in excess of the amount to which Franklin and his attorney were entitled under the Workers' Compensation Act.
The review of this case is governed by the Workers' Compensation Act, which provides that "[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." Ala. Code 1975, § 25-5-81(e)(2); see also Exparte Trinity Indus., Inc., 680 So.2d 262, 269 (Ala. 1996). Substantial evidence is "`evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Fryfogle,742 So.2d 1258, 1260 (Ala. 1999) (quoting West v. Founders Life AssuranceCo. of Florida, 547 So.2d 870, 871 (Ala. 1989)); see also Ex parteTrinity Indus., supra. "[T]here is a presumption of correctness in favor of the trial judge regarding findings of fact, including the determination of disability." Mutual Sav. Life Ins. Co. v. Hogue,693 So.2d 530, 531 (Ala.Civ.App. 1997). "`This court is precluded from weighing the evidence presented before the trial court. We merely examine the record to determine if the conclusion of the trial court is reasonably supported by the evidence, and, if so, whether the trial court has drawn the correct legal conclusions therefrom.'" Smith v. MichelinNorth America, Inc., 785 So.2d 1155, 1158 (Ala.Civ.App. 2000) (quotingFryfogle v. Springhill Mem'l Hosp., Inc., 742 So.2d 1255 (Ala.Civ.App. 1998), aff'd, 742 So.2d 1258 (Ala. 1999)). Further, we review legal issues "without a presumption of correctness." Ala. Code 1975, §25-5-81(e)(1).
James River argues that the trial court erred because in its judgment the trial court relied upon the deposition testimony of Dr. Robert Allen and Exhibit 1 to the deposition testimony of Dr. Kenneth Staggs. James River argues that neither Dr. Allen's deposition testimony nor Exhibit 1 to Dr. Staggs's deposition testimony were admitted into evidence. It supports its argument regarding Dr. Allen's deposition by noting that the deposition transcript is not included in the record on appeal transmitted to this court by the circuit court. According to James River, the trial court relied upon this allegedly extrinsic evidence to determine that Franklin suffered from arachnoiditis, a disabling condition caused by an inflammation of one of the coverings that envelopes the brain and spinal cord and whose symptoms include numbness, tingling, and burning pain in the legs.
As to Dr. Allen's deposition testimony, James River filed a motion to strike that testimony before the May 2000 trial. However, during a pretrial discussion between the attorneys for both parties and the trial court, James River also requested that, if the trial court decided to admit Dr. Allen's deposition testimony, James River be given the opportunity to have Dr. *Page 167 
Staggs review Dr. Allen's medical opinion and reevaluate Franklin.
The transcript from the trial indicates that the trial court admitted Dr. Allen's deposition testimony into evidence, without objection, as part of 24 exhibits offered by Franklin. However, at the close of the trial the court stated:
 "[T]he deposition of Dr. Allen . . . has been offered but it is not admitted yet.
". . . .
 ". . . What I'm going to do is read these depositions [from other physicians] and see if I can rule in this case without the testimony of Dr. Allen. . . . And if I can, then I'm going to do that, and then all the rest of it is moot.
 "If I read those depositions and determine that I need to read Dr. Allen's deposition, I will then admit it, read it, and then rule on [James River's] request to have a separate evaluation.
"[James River's Counsel]: All right, sir."
James River argues that the trial court granted its motion to strike Dr. Allen's testimony. However, the record contains no order granting that motion and the above discourse, along with the trial court's discussion of Dr. Allen's deposition testimony in its judgment, indicates that the trial court admitted Dr. Allen's deposition into evidence and denied James River's request for a separate evaluation. The trial court did not consider extrinsic evidence when it reviewed Dr. Allen's deposition testimony.[1]
As to Exhibit 1 to Dr. Staggs's deposition testimony, the trial court stated in its judgment that that exhibit indicated that Dr. Staggs had diagnosed Franklin with arachnoiditis in 1998, approximately two years before Dr. Allen examined Franklin. The record reflects that Dr. Staggs's deposition testimony was admitted into evidence, without objection, but that there was some confusion regarding the assembly of depositions and exhibits at the close of the trial. James River correctly notes that no exhibits are attached to Dr. Staggs's deposition testimony in the record on appeal, although two exhibits are referred to in that deposition testimony. While Dr. Staggs's curriculum vitae is referred to as Exhibit 1, a composite exhibit of Dr. Staggs's medical records is referred to as Exhibit 2.
Although no exhibits are physically attached to Dr. Staggs's deposition testimony in the record on appeal, a composite exhibit of Dr. Staggs's medical records is contained in the record on appeal immediately following all of Franklin's exhibits. That composite exhibit is marked as James River's Exhibit 2 and is located immediately behind Dr. Staggs's curriculum vitae, which is marked as James River's Exhibit 1. Among the records found in James River's Exhibit 2 are two September 1998 pain-management reports from Dr. Staggs in which Dr. Staggs diagnosed Franklin with arachnoiditis. Based upon the record, it appears that the exhibits to Dr. Staggs's deposition testimony were not placed with his deposition testimony by mistake and that the trial court looked at the wrong exhibit number in writing its judgment. However, Dr. Staggs's 1998 diagnosis that Franklin had arachnoiditis is part of the record on appeal. James River's argument that the trial court relied on an exhibit to Dr. Staggs's deposition testimony that was not admitted into evidence is without merit.
James River next argues that the trial court's determination that Franklin *Page 168 
suffered a permanent total disability was not supported by substantial evidence. Pursuant to the Workers' Compensation Act, a "permanent total disability" includes, in pertinent part, "any physical injury . . . resulting from an accident, which injury . . . permanently and totally incapacitates the employee from working at and being retrained for gainful employment." Ala. Code 1975, § 25-5-57(a)(4). We have stated that permanent total disability means "the inability to perform one's trade and the inability to find other gainful employment." Jim WalterResources, Inc. v. Budnick, 619 So.2d 926, 927 (Ala.Civ.App. 1993). We also have stated that permanent total disability under the Workers' Compensation Act "does not mean absolute helplessness or entire physical disability." Id.; see also Fryfogle, 742 So.2d at 1258.
In making a determination regarding the extent of disability, "the trial court must consider all the evidence, including its own observations, and interpret it to its own best judgment." Cooper v.Seven Rivers, Inc., 688 So.2d 883, 886-87 (Ala.Civ.App. 1997); see alsoEllenburg v. Jim Walter Resources, Inc., 680 So.2d 282 (Ala.Civ.App. 1996). Further, "[a]n injured employee's own subjective complaints of pain are legal evidence which may support a finding of disability." JimWalter Resources, Inc., 619 So.2d at 927.
The trial court heard ore tenus testimony from Franklin; Bill Vinson, a certified vocational counselor; and Tracy Marvin, a human resources coordinator from James River. In addition, the trial court reviewed deposition testimony from seven doctors who had examined or treated Franklin between 1994 and 2000, and it reviewed numerous medical records. James River argues that the trial court made 10 factual findings that are not supported by substantial evidence and that the trial court's determination that Franklin suffered a permanent total disability was not supported by substantial evidence.
From a review of the record it appears that James River has located some statements in the trial court's judgment regarding what particular doctors concluded that are not supported by substantial evidence. For example, after Dr. William Bridges's 1995 examination of Franklin, Dr. Bridges did not conclude, as the trial court stated, that Franklin suffered from nerve-root compression. Dr. Bridges testified that based upon his examination he could not definitively determine that Franklin suffered from nerve-root compression. However, we note that Dr. Donald Cook, who examined Franklin in 1996, testified that Franklin had a herniated disc and nerve-root compression, and that a radioligist's report and MRI test results from 1994 indicated that Franklin had some nerve-root compression associated with his herniated disc after his first back injury.
Many of James River's arguments relate to medical examinations that occurred before the parties' December 1997 settlement and, more importantly, before Franklin's treatment by Dr. Staggs and the 1998 surgery by Dr. Ilercil. Importantly, Franklin testified that his condition significantly worsened after his second back surgery in 1998.
The testimony from the six doctors whose depositions are included in the record on appeal[2] is practically unanimous *Page 169 
that Franklin suffered a substantial injury to his back that limited his ability to perform his job; that Franklin's pain and physical limitations had restricted his opportunity for employment; that the doctors had had limited success in treating Franklin; and that his condition and pain were permanent. Reviewing the record as a whole, and particularly those determinations that the trial court specifically relied upon in concluding that Franklin suffered a permanent total disability, we conclude that the misstatements by the trial court that James River has noted constitute harmless error. See Rule 45, Ala.R.App.P.; Reed v. JamesR. Fincher Timber Co., 659 So.2d 660, 663 (Ala.Civ.App. 1995).
As to the trial court's determination that Franklin was permanently and totally disabled, in addition to the doctors' deposition testimony regarding Franklin's condition, the trial court determined that Franklin "was a very believable witness"; that he appeared to be in pain during his testimony; that he had had two back surgeries; that he was in constant pain and had burning and numbness in his leg; that he constantly felt like he was going to have a bowel movement; that he could not sit for the time necessary for him to perform sedentary work; and that he could not walk for the 6 hours per day necessary for light duty work. In its judgment, the trial court noted that Franklin had marginal academic ability and stated that
 "[Franklin] is a 47 year old male who was injured six and one-half years ago, underwent intense medical care and procedures for six and one-half years . . . walks with an impaired gait, has problems standing, has a severe weight lifting limit . . . cannot engage in activities requiring repetitive bending, stooping, squatting, crawling, ladder climbing or prolonged standing or sitting, must change positions every 30 minutes, must have bed rest two times a day and 6 to 10 days each month has recurrent bouts with his back requiring him to be bedridden and confined to his home, has a relevant work history involving only heavy manual labor, has no transferrable skills, and is not a candidate for retraining."
In addition, the trial court noted that "Bill Vinson, a certified vocational counselor, . . . testified that [Franklin] was not employable, had sustained a total loss of his earning capacity, and is not a candidate for retraining." The trial court stated:
 "In conclusion, the Court finds that before his injuries, [Franklin] was a diligent worker, but now, with the injured back producing disabling pain on constant activity and with [Franklin's] restriction of motion, it is obvious to the Court that [Franklin] has lost considerable ability to function and is not able to hold a job."
The record also indicates that Franklin had tried to perform the job of a machine inspector for approximately six days in 1998, after he had been released for work by Dr. Staggs, but that Franklin had been forced to stop working at that position because of back pain. The record also reflects that Franklin had not been employed since that time. As noted above, James River had offered Franklin another job as a machine inspector a few days after his case was set for trial. Tracy Marvin, a human resources coordinator for James River, testified that the inspector's job that James River had offered to Franklin involved the inspection of machines over a two-floor area; that each floor was approximately 120 yards by 100 yards in surface area; that the inspector had to climb *Page 170 
stairs; and that the inspector had to be "on his feet" six hours per day.
Franklin testified that although he wanted to return to work, he knew that he could not perform that job because of walking and lifting requirements and because of the number of days per month when he could not even get out of bed because of back pain. Bill Vinson likewise testified that, in his opinion as a vocational counselor, Franklin could not perform the requirements of a job like machine inspector.
Based upon our review of the record, the trial court's determination that Franklin had a permanent total disability is supported by substantial evidence and that portion of the trial court's judgment is due to be affirmed.
James River next takes issue with that portion of the trial court's judgment requiring James River to pay Franklin an attorney's fee in relation to the court's award of compensation for the 46-week period between the date of trial and the date of the trial court's judgment. James River argues that the wording of the trial court's judgment could require it to pay the attorney's fee in addition to, rather than out of, the compensation awarded.
The trial court held that, among other things, Franklin was
 "entitled to Forty-Six (46) weeks of total disability benefits which have accrued since the trial at the rate of Four Hundred Forty-Three and No/100 ($443.00) Dollars per week for a total of Twenty Thousand Three Hundred and Seventy-Eight Dollars ($20,378.00). If [James River] has paid same or a portion of same, credit should be given for such."
Thus, James River correctly notes that the trial court granted it a credit for total disability benefits that it had actually paid to Franklin after the trial date, but before the date of the judgment.
Section 25-5-90(a), Ala. Code 1975, provides that the trial court "shall fix the fee of the attorney for the plaintiff for his or her legal services and the manner of its payment, but the fee shall not exceed 15 percent of the compensation awarded or paid." Based on an award of $20,378 for the 46-week period in question, the trial court calculated an attorney's fee of $3,056.70. Neither party on appeal argues that $3,056.70 "exceed[s] 15 percent of the compensation awarded or paid" for the 46-week period. The only question presented is whether the way in which the trial court's judgment is worded could result in James River being obligated to pay up to $3,056.70 in attorney's fees in addition to its obligation to pay the $20,378 in disability benefits.
As James River notes, the trial court's judgment does state that Franklin's attorney shall "receive the sum of . . . $3,056.70 . . . as a reasonable attorney's fee [and that] [s]aid attorney's fees are to be paid in full and in a lump sum by [James River]." Elsewhere in the judgment, however, the trial court stated that James River was to pay Franklin "the benefit accrued as compensation for permanent total disability benefits for the period from the [date of the trial] until the date of this judgment, . . . less the . . . 15% . . . attorney's fee of . . . $3,056.70." (Emphasis added.)
We have stated that under the Workers' Compensation Act an attorney's fee is to be awarded out of, not in addition to, the compensation awarded or paid to the employee. See Liberty Trousers Div. of Walls Indus. v.Amos, 738 So.2d 1272, 1274 (Ala.Civ.App. 1999). We have also stated that
 "[j]udgments are to be construed like other written instruments. . . . Separate *Page 171 
provisions of judgments . . . should be construed in pari materia, and the entire judgment — all provisions considered — should be read as a whole in the light of all the circumstances."
Moore v. Graham, 590 So.2d 293, 295 (Ala.Civ.App. 1991). Seealso Avery Freight Lines v. Persons, 250 Ala. 40, 32 So.2d 886 (1947) (favoring construction of a judgment that will support it rather than require reversal).
Based upon the foregoing, and reading the trial court's judgment as a whole, we construe the trial court's judgment to require James River to pay a total of $20,378 to Franklin and his attorney for the 46-week period between the date of the trial and the date of the judgment. If James River has already paid Franklin $20,378 for that 46-week period, then James River has no further obligation under this portion of the trial court's judgment. To the extent that James River has paid anything less than $20,378 to Franklin for the 46- week period, the balance owed by James River to Franklin and his attorney shall be equal to the difference between $20,378 and the amount already paid by James River. As so construed, that portion of the trial court's judgment awarding attorney's fees to Franklin's attorney is due to be affirmed.
AFFIRMED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
[1] James River does not argue on appeal that the trial court erred in denying its motion to strike Dr. Allen's deposition or that the trial court erred in not allowing James River the opportunity to have Dr. Staggs review Dr. Allen's deposition and reevaluate Franklin.
[2] As noted above, Dr. Allen's deposition transcript is not included in the record on appeal. However, other than noting that Dr. Staggs's 1998 diagnosis of arachnoiditis had been corroborated by Dr. Allen in 2000, it does not appear that the trial court relied upon Dr. Allen's deposition testimony when it determined that Franklin was permanently and totally disabled.