Rel: February 13, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

## CL-2025-0215

_____

## Professional Education Services Group, LLC

### v.

## Richard A. Ford

### Appeal from Madison Circuit Court
### (CV-21-900324)

BOWDEN, Judge.

Professional Education Services Group, LLC ("PESG"), appeals from a judgment of the Madison Circuit Court ("the circuit court") finding Richard A. Ford to be permanently and totally disabled and awarding him compensation for "the remainder of [his] natural life." We affirm the circuit court's judgment in part and reverse it in part.

<u>Procedural History</u>

Ford filed a complaint against PESG and fictitiously named defendants on March 9, 2021, and he filed an amended complaint against PESG and Zurich American Insurance Company ("Zurich") on March 6, 2024. In his amended complaint, Ford alleged that he had sustained an injury to his left shoulder as the result of a fall that occurred during the course and scope of his employment with PESG. Zurich was eventually dismissed from Ford's action, and Ford did not substitute a named defendant for any of the fictitiously named defendants, leading to their dismissal as defendants, see Rule 4(f), Ala. R. Civ. P., and leaving PESG as the only defendant.

Before trial on Ford's amended complaint, the parties stipulated to, among other things, the following: (1) the relationship of employer/employee existed between the parties at the time of the injury; (2) Ford reached maximum medical improvement ("MMI") on December 7, 2020; and (3) the sole issue for consideration by the circuit court is the nature and extent of Ford's disability.

The circuit court held a trial on February 3, 2025, and issued its judgment on February 11, 2025. In its judgment, the circuit court found

that, after reaching MMI, Ford "was not able to return back to gainful employment that he had previously performed." The circuit court also found that Ford's heart condition, discussed infra, "does not in any [way] affect the fact that he was totally disabled as a result of his injury and prior to any episode that occurred with his heart which [the circuit court] finds is and was unrelated to the fall." Among other things, the circuit court awarded Ford compensation for "the remainder of [his] natural life."

PESG did not file a postjudgment motion. It timely appealed on March 25, 2025.

<u>Factual History</u>

Ford graduated high school in 1979. He then received a two-year certificate in commercial and industrial refrigeration. He testified that, because his work in refrigeration had been in the commercial and industrial sector, his employment had involved "heavy work" and had required heavy lifting. He testified that he had been in the field of commercial and industrial refrigeration for his entire career, although he testified about a brief employment that involved handling residential refrigeration work. He testified that he had worked for an automotive

company for three years. He testified that, subsequently, he began working for the Huntsville Board of Education in 1986. In that position, Ford performed work on industrial-type HVAC equipment that, he testified, required heavy lifting. He stated that he retired from that position in 2011.

Retirement, Ford testified, was "really boring," so he worked for Home Depot as a third-shift night stocker. That position, however, "just wasn't for [Ford]." Ford left employment with Home Depot to work for KBB Electric Motor Sales and Service. With KBB, Ford performed work such as "electric motor tear down, pump tear down, electric motor rewinds …." Ford described the work as "pretty hefty work, okay?" Ford eventually went to work for PESG. He described PESG as a staffing agency; however, Ford testified that he performed essentially the same HVAC-related duties that he had performed when he was working for the Huntsville Board of Education. He testified that his employment with PESG required heavy lifting.

On June 17, 2019, Ford sustained an injury to his left shoulder during the course and scope of his employment with PESG. He testified that he tripped and fell after the laces on his boot caught on a chain link

fence. The fall caused him to land on the ground on his left shoulder, forearm, and left side of his face. Ford "fell like a tree."

Ford testified that he never went back to work after the June 17, 2019, incident. Dr. Thomas Thomasson performed a reverse total shoulder arthroplasty on Ford's left shoulder in June 2020. Ford testified that he is still being treated by Dr. Thomasson, who, Ford testified, prescribes patches and pain creams. Ford testified that he still has pain in his left shoulder and has asked about pain medication. Ford testified, however, that he is not currently on narcotic pain medication.

Ford underwent a functional-capacity evaluation ("FCE") by Dr. David Hinger at The Orthopaedic Center on November 24, 2020. Dr. Hinger noted that there were some inconsistences with effort throughout the evaluation and that, "[o]verall, it was felt to be a mildly inconsistent test." Dr. Carter assigned Ford a total-left-upper-extremity impairment rating of 44% and a "whole person impairment of 26%." The FCE results indicate that, based upon his demonstrated effort, "Ford is able to work at the SEDENTARY Physical Demand Level for an 8 hour day according to the Dictionary of Occupational Titles, U.S. Department of Labor,

1991." (Capitalization in original). Dr. Thomasson reviewed the FCE and Dr. Carter's impairment rating and agreed with the rating.

On March 19, 2021, Ford saw Dr. Thomasson. Dr. Thomasson noted that he would continue to have Ford bear weight and do activities as tolerated. Dr. Thomasson noted that he would "have him return to work per his functional capacity exam."

Ford also received a vocational report by Anne Darnell. Darnell concluded: "Based on my careful review of the FCE and medical records, Mr. Ford would be unable to perform his past relevant work of Commercial Refrigerator Mechanic which requires lifting over 100 lbs. and frequent overhead reaching. In addition he has a significant lack of transferrable skills to accommodating occupations." Darnell wrote further that "[b]ased on Ford's age, education, vocational testing, lack of transferrable skills and careful review of medical records[,] Mr. Ford has a Loss of Earning Capacity and Vocational Disability Rating of 100%. He is incapable of obtaining and maintaining competitive employment."

Ford testified that he wanted to work but that he could no longer work.

Ford testified extensively about the changes to his daily activities after the work-related incident. He testified that he cannot operate a lawn mower or a four-wheeled vehicle due to pain caused by the vibrations of those machines. He testified that he could no longer ride a motorcycle, swim in the deep end of the pool, set up a camper, and that he could no longer hunt because the shotgun would jar his whole body. He also testified that he sleeps in a recliner and can no longer sleep lying down because of the pain in his shoulder. He testified that he could no longer give piggy-back rides to his granddaughter or swing a softball bat when playing softball with her.

Ford also testified about his shoulder pain. He testified that it begins in the morning at "around a two or a three" because of inactivity overnight. He testified that by noon the pain has progressed to a "two or a three, maybe four" but is mitigated by him taking "a couple Tylenols" and using "pain cream." He testified that, by the end of the day, his pain is at around a "four or a five." Ford testified that he sees Dr. Thomasson every six months for pain management.

Evidence was also presented to the circuit court about Ford's heart condition. On July 10, 2020, after the June 2020 surgery on his left

shoulder, Ford was admitted to a hospital due to pneumonia. While there, Ford was observed to have cardiomyopathy which, it was observed, contributed to his ejecting blood from his heart at a rate of 25%. Ford applied for, and receives, benefits from the Social Security Administration ("the SSA"). On his application for benefits from the SSA, Ford indicated that his only employment in the last 15 years was working as an "HVAC Specialist" for the Huntsville Board of Education. The SSA determined that Ford was disabled. According to the SSA, Ford's "primary diagnosis" is "heart failure." His secondary diagnosis is "Substance Addiction Disorders (Alcohol)." Ford testified that, although his heart condition had been a latent issue, it had not kept him from working.

The circuit court made the following pertinent findings of fact and conclusions of law in its judgment:

> "6. the Court finds [Ford's] work history reveals that he had never done any sedentary work and so in December of 2020 when he was assigned eight hours of sedentary work he does not return back to work. The court does note that in 2021 he had an unrelated heart episode that resulted in him filing for Social Security Disability in the middle of 2021. The Court specifically notes that even prior to filing for Social Security Disability he never returned back to work as a result of the injury to the left shoulder and the restrictions from the FCE and the restriction of only sedentary work which had never

8

been the function that he had performed during the course of his entire work history.

"7. Taking into consideration the 23% impairment rating and the assignment of total sedentary duty that had been attached to the plaintiff the Court finds that as of the MMI date [of] December 7, 2020[,] [Ford] was not able to return back to the gainful employment that he had previously performed. In actuality [Ford] is under the requirement to go see Dr. Thomasson every 3 months just to check on his pain level.

"<u>CONCLUSION OF LAW</u>

"....

"... [Ford's] work history shows he has never during the course of his entire working life performed sedentary work and that [PESG] did not indicate whether any sedentary work or other alternative work within ... the restrictions was offered. The only information that was offered at trial concerned the heart attack he had in 2021 which had nothing to do with the fact that he was never allowed to go back to work from December 11, 2020[,] until the time he filed for social security disability on April 29, 2021. The Court further finds that the problems [Ford] had with his heart does not in any way affect that he was totally disabled as a result of his injury and prior to any episode that occurred with his heart which the Court finds is and was unrelated to the fall. After the medical treatment[,] ... the opinions received from the doctors that were assigned to [Ford] for purposes of his workers' compensation injury ... placed him in a totally sedentary position[,] which ... [Ford] will remain in throughout his working life. [PESG] offered no evidence showing that there was a plan that would have allowed him to do work that would have fell within a sedentary restriction[,] nor did [PESG] indicate that there was ever an offer of work within that restriction."

(Bold typeface omitted.)

Standard of Review

The Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975, prescribes the following standard of review for judgments entered in a workers' compensation action:

"From an order or judgment, any aggrieved party may, within 42 days thereafter, appeal to the Court of Civil Appeals and review shall be as in cases reviewed as follows:

"(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.

"(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence."

Ala. Code 1975, § 25-5-81(e). "Substantial evidence" is " 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So. 2d 262, 268 (Ala. 1996)(citation omitted); Brewton Area Young Men's Christian Ass'n v. Lanier, 232 So. 3d 887, 893 (Ala. Civ. App. 2017). When reviewing whether substantial evidence supports the factual findings in a trial

court's judgment, this court does not examine whether substantial evidence supports a contrary factual finding; instead, this court must consider only whether there is substantial evidence to support the factual findings made by the trial court. Lanier, 232 So. 3d at 893.

Analysis

I. Whether substantial evidence supported the circuit court's finding of permanent total disability

PESG argues that the circuit court's determination that Ford suffered a permanent total disability was not supported by substantial evidence.

> "We have stated that permanent total disability means 'the inability to perform one's trade and the inability to find other gainful employment.' Jim Walter Resources, Inc. v. Budnick, 619 So. 2d 926, 927 (Ala. Civ. App. 1993). We also have stated that permanent total disability under the Workers' Compensation Act 'does not mean absolute helplessness or entire physical disability.' Id.; see also [Ex parte]Fryfogle, 742 So. 2d at 1258 [(Ala. 1999)].
>
> "In making a determination regarding the extent of disability, 'the trial court must consider all the evidence, including its own observations, and interpret it to its own best judgment.' Cooper v. Seven Rivers, Inc., 688 So. 2d 883, 886-87 (Ala. Civ. App. 1997); see also Ellenburg v. Jim Walter Resources, Inc., 680 So. 2d 282 (Ala. Civ. App. 1996). Further, '[a]n injured employee's own subjective complaints of pain are legal evidence which may support a finding of disability.' Jim Walter Resources, Inc., 619 So. 2d at 927."

11

James River Corp. v. Franklin, 840 So. 2d 164, 168 (Ala. Civ. App. 2002).

PESG's sufficiency-of-the-evidence argument is twofold. It argues that the affirmative evidence that Ford is permanently and totally disabled because of his left-shoulder injury is not substantial evidence of permanent disability because, it argues, the affirmative evidence consists of only Ford's testimony that he had only ever worked as an HVAC mechanic and that he did not return to work after the June 17, 2019, incident. PESG also argues that the evidence is not sufficient because no "doctor" stated that Ford was incapable of any type of gainful employment and none of the medical records presented establish that Ford is incapable of gainful employment as a result of his left shoulder injury. PESG argues that, because of the lack of testimony regarding Ford's inability to obtain gainful employment, the judgment in this case, like the judgment in Ex parte Southern Energy Homes, Inc., 873 So. 2d 1116 (Ala. 2003), should be reversed.

Ex parte Southern Energy Homes, however, does not stand for the proposition that a plaintiff must provide medical or expert testimony to establish that a plaintiff is unable to find other gainful employment; it merely stands for the proposition that, under the facts of that case, there

was not sufficient evidence to find that the plaintiff in that case was unable to find other gainful employment. See Ex parte Caldwell, 104 So. 3d 901, 905 (Ala. 2012)("[Ex parte Southern Energy Homes, 873 So. 2d 1116 (Ala. 2003); Jackson Landscaping, Inc. v. Hooks, 844 So. 2d 1267 (Ala. Civ. App. 2002); and G.UB.MK. Constructors v. Davis, 45 So. 3d 1277 (Ala. Civ. App. 2010),] remind us that compensability in the context of workers' compensation is determined upon a case-by-case review of the totality of the evidence presented."); Stericycle, Inc. v. Patterson, 161 So. 3d 1170, 1180 (Ala. Civ. App. 2013)(plurality opinion)(distinguishing Ex parte Southern Energy Homes and noting that trial court had not erred by finding medical and expert testimony unpersuasive, stating "[Ex parte] Southern Energy Homes[, 873 So. 2d 1116 (Ala. 2003)], is distinguishable from the present case because, in this case, the trial court believed Patterson's testimony that she had experienced unrelenting pain since January 19, 2011, expressly determining that Patterson's 'subjective manifestations of pain [were] credible.' The trial court was not required to explain why it found the physicians' impairment ratings or symptom-magnification determinations unpersuasive."). Ex parte Southern Energy Homes therefore does not support the proposition that

medical testimony about a plaintiff's ability to return to work is required to sustain a finding of permanent total disability.

Furthermore, the facts of Ex parte Southern Energy Homes and the facts of this case are materially distinguishable. In Ex parte Southern Energy Homes, the plaintiff was not assigned any work restrictions and none of the "doctors, psychologists, or experts stated after examining [the plaintiff] that [the plaintiff] was incapable of gainful employment." Ex parte Southern Energy Homes, 873 So 3d. at 1123. The plaintiff was assigned an impairment rating of "at most 5%," and at least one physician concluded that the plaintiff could perform light-, medium-, and even heavy-duty work, given the right conditions. Id. The only limitations placed on the plaintiff's job prospects were because of her intellectual capacity and level of education. The Alabama Supreme Court concluded that the evidence was far from sufficient to support a finding of an "'inability to find other gainful employment.'" Id.

Unlike the plaintiff in Ex parte Southern Energy Homes, Ford was assigned sedentary-work restrictions by a medical provider, prohibiting him from medium- and heavy-duty work. Additionally, a vocational report indicated that Ford could not perform either his prior profession

14

of "Commercial Refrigerator Mechanic" or any other profession "[b]ased on [his] age, education, vocational testing, [and] lack of transferrable skills." Darnell expressly concluded in the vocational report that Ford is "incapable of obtaining and maintaining competitive employment." Additionally, unlike the plaintiff in Ex parte Southern Energy Homes, who received an impairment rating of "at most 5%," Ford was assigned a total-left-upper-extremity impairment rating of 44% and a "whole person impairment of 26%." There are material factual differences between this case and Ex parte Southern Energy Homes. Accordingly, neither the holding nor the facts of Ex parte Southern Energy Homes compels a reversal of the circuit court's judgment in this case.

PESG's argument with respect to the affirmative evidence of Ford's disability is also unpersuasive. PESG argues that the affirmative evidence of Ford's inability to return to employment consists only of Ford's testimony that he had only ever worked as an HVAC mechanic and that he did not return to work after the June 17, 2019, incident. PESG overlooks the vocational report, which found that Ford could not return to gainful employment or maintain competitive employment. Furthermore, the circuit court appears to have relied upon Ford's

15

complaints of pain when determining that Ford was permanently and totally disabled, and Ford provided evidence to support that finding in the form of his testimony at trial. Ford testified that he experiences ongoing pain in his left shoulder that prohibits him from hunting, swimming, and sleeping lying down. He testified that he must take breaks to rest his shoulder after doing daily chores and activities. He also testified that he is still prescribed pain creams because of his shoulder pain. Based on Ford's testimony, the circuit court could have reasonably concluded that Ford was not able to find other gainful employment because of his pain. See Jim Walter Res., Inc. v. Budnick, 619 So. 2d 926, 927 (Ala. Civ. App. 1993)("An injured employee's own subjective complaints of pain are legal evidence which may support a finding of disability.").

II.    Whether the circuit court erred in making or relying on certain factual findings

PESG argues that the circuit court erred by relying on the results of the FCE. The issues with Ford's performance during the FCE were apparent from the FCE results and therefore known to the circuit court. In light of those apparent issues, the circuit court, as the evaluator of the

16

evidence, was free to accept or disregard the findings of the FCE. Furthermore, Ford's physician, who was also necessarily aware of the issues with Ford's performance during the FCE, adopted the findings of the FCE. The circuit court therefore did not err by relying on the FCE.

PESG also argues that the circuit court erred by awarding permanent-total-disability benefits because, it argues, Ford's disabling condition is unrelated to his on-the-job injury. PESG's argument hinges on Ford's congestive heart failure as being Ford's disabling condition. The circuit court's judgment, however, clearly finds that Ford was permanently and totally disabled because of his shoulder injury. The relevant question is, therefore, whether there was sufficient evidence before the circuit court for it to find that Ford was permanently and totally disabled due to his left-shoulder injury alone. We have already resolved that question in the affirmative in Part I of the Analysis section of this opinion. Thus, the circuit court did not err by discounting Ford's heart condition, which it reasonably could have found to be an independent condition unrelated to the condition causing Ford's disability.

PESG points out that the circuit court's finding of fact related to the timing of the diagnosis of Ford's heart condition was in error. On this point, PESG is correct. The circuit court's finding of fact regarding the diagnosis date of Ford's heart condition and his suffering a "heart attack" does not appear to be supported by the evidence adduced at trial. But in the context of this case, that finding is harmless error. There is no testimony indicating that the work restrictions that were assigned to Ford by Dr. Thomasson were because of Ford's heart condition or that his heart condition had factored into Darnell's vocational report. See James River Corp., 840 So. 2d at 168 (noting that trial court had made several factual errors regarding the medical testimony, and that several of the trial court's subordinate factual findings were, therefore, incorrect, but concluding that those misstatements amounted to harmless error because the record as a whole supported the ultimate factual determination that the employee was permanently and totally disabled). "The judgment of the trial court will not be reversed for harmless error. Rule 61, Ala. R. Civ. P.[,] and Rule 45, Ala. R. App. P." Coastal Bail Bonds, Inc. v. Cope, 697 So. 2d 48, 52 (Ala. Civ. App. 1996).

III.   Whether the circuit court erred by awarding Ford permanent-total-disability benefits for "the remainder of [his] natural life"

Ford asserts -- and PESG agrees -- that the circuit court erred by awarding Ford permanent-total-disability benefits for the remainder of his natural life. Accordingly, as in K.H. v. Limestone County Department of Human Resources, 361 So. 3d 770, 771 (Ala. Civ. App. 2022), and J.B. v. Jefferson County Department of Human Resources, 252 So. 3d 674 (Ala. Civ. App. 2017), "[t]he posture of the case is in effect a confession of error on the part of the appellee and a joinder therein by the appellant." Payton v. Sexton, 273 Ala. 224, 225, 137 So. 2d 747, 748 (1962). Despite that posture, this court is not bound by the parties' agreement on a confessed error, and we will not reverse the circuit court's judgment if no actual error occurred. Murphy v. Dees, 293 Ala. 529, 532, 307 So. 2d 1, 3 (1975)(refusing to reverse trial court's judgment because the error confessed to by the appellee did not constitute reversible error as a matter of law); Boss Livery Co. v. Griffith, 17 Ala. App. 474, 475, 85 So. 849, 849 (1920)(refusing to reverse trial court's judgment, despite a confession of error, because "the trial court should not be put in error where there is none").

19

We agree with Ford and PESG, however, that a circuit court may not award permanent-total-disability benefits for the remainder of an employee's natural life. Reeves Rubber, Inc. v. Wallace, 912 So. 2d 274, 282 (Ala. Civ. App. 2005)("[T]his court has consistently reversed judgments in which an employee was awarded permanent-total-disability benefits for the remainder of the employee's life."); Hilyard Drilling Co. v. Janes, 462 So. 2d 942, 943 (Ala. Civ. App. 1985)("Under [Ala. Code 1975, § 25-5-57], it is true that an award for permanent total disability compensation may not be made for a period defined as 'for and during his natural lifetime,' because the period of compensation lasts only as long as the disability continues, Thompson & Company Contractors v. Cole, 391 So. 2d 1042 (Ala. Civ. App. 1980) [construing § 25-5-57(a)(4)a.]."). Accordingly, we must reverse the circuit court's judgment to the extent that it awarded Ford permanent-total-disability benefits for the remainder of his natural life. See King v. City of Montgomery, 41 Ala. App. 260, 261, 128 So. 2d 340, 340 (1961)("We consider the confession of error made by the appellee well grounded, and under the long-settled doctrines of decisions by our Supreme Court, and of this Court, this judgment must of necessity be reversed.").

<u>Conclusion</u>

We reverse the circuit court's judgment to the extent that it awarded Ford permanent-total-disability benefits for the remainder of his natural life; otherwise, the judgment is affirmed.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Moore, P.J., and Edwards, Hanson, and Fridy, JJ., concur.