856 So.2d 847 (2003)
Robin LEMONS
v.
STATE of Alabama DEPARTMENT OF FINANCE.
State of Alabama Department of Finance
v.
Robin Lemons.
2010796.
Court of Civil Appeals of Alabama.
March 7, 2003.
*848 James M. Sizemore, Jr., Montgomery, for appellant/cross-appellee Robin Lemons.
William H. Pryor, Jr., atty. gen., and Mose Stuart, asst. atty. gen., Department of Finance, for appellee/cross-appellant.
PER CURIAM.
Robin Lemons appeals and the State of Alabama Department of Finance cross-appeals from the trial court's modification of a determination of Lemons's permanent-partial-disability rating by the Department of Finance, through the State Employee Injury Compensation Trust Fund (the Department of Finance and the State Employee Injury Compensation Trust Fund are hereinafter collectively referred to as the "Trust Fund"), and approved by the Trust Fund's Review Board ("the Review Board"). The trial court modified Lemons's disability rating from 3% to 30%. Lemons argues that the evidence presented necessitates a finding that she is totally and permanently disabled. The Trust Fund argues that the trial court erred in modifying its determination. We reverse and remand with instructions as to both the appeal and the cross-appeal.
On December 3, 1996, Lemons, an accountant with the Administrative Office of Courts (hereinafter referred to as "AOC"), *849 suffered an injury, which she reported on December 4, 1996. In an "Employer's First Report of Injury or Occupational Disease," the cause of Lemons's injury was reported as follows:
"Employee['s] duties at AOC require[] daily data entry by computer and often for prolonged periods of time. Because of such activity, the employee[']s right forearm causes her pain on a daily basis."
Lemons's injury and the body part affected were described as "[p]ain in the right forearm on a daily basis." Lemons was sent to Dr. Donald Hodurski for treatment of her injury. Dr. Hodurski initially treated Lemons with injections, stating in his medical records on February 14, 1997, that she "has got a two-fold problem; radial epicondylitis and a true impingement."[1]
On July 21, 1997, the Trust Fund received the "Employer's First Report of Injury or Occupational Disease." On July 24, 1997, Dr. Hodurski performed surgery on Lemons's right elbow. On October 30, 1997, Dr. Hodurski released Lemons to return to work. After one week Lemons left work because, she said, she was in excessive pain. On December 1, 1997, Dr. Hodurski once again treated Lemons's elbow with an injection. On January 26, 1998, Dr. Hodurski noted in Lemons's medical records as follows:
"Robin Lemons is in my opinion ready to go back to work. She states she can't do anything. She was better; she was better each month. There is no change in the wound. There is no change in swelling. It's time to let her go. With the degree of discomfort she has most people should be able to do a functional day's work. I'm certain that she has some pain and problems but I have nothing further to offer, and my recommendation is to return to work."
After noting that Lemons presented herself with no pain on February 26, 1998, a note entered by Dr. Hodurski on March 26, 1998, stated that Lemons was again experiencing pain. On that same day, Dr. Hodurski determined that Lemons had reached maximum medical improvement and assigned Lemons a 10% impairment rating to her upper right extremity and a 3% impairment rating to her whole body resulting from the injury, without preexisting cause.[2]
On April 17, 1998, Lemons sent a memorandum to the Trust Fund seeking a second opinion from another physician, stating that "I am not happy with continuing problems I am experiencing trying to do my job. Although I am still observing `light duty,' I am in considerable pain and unable to cope." On April 21, 1998, the Trust Fund responded to Lemons's request and provided her a list of four physicians from which to choose one to see regarding her injury. On April 29, 1998, Lemons chose Dr. Perry Savage; the Trust Fund set an appointment for Lemons to be examined by Dr. Savage. After examining Lemons on May 8, 1998, Dr. Savage noted in his medical records that *850 "I believe she has tennis elbow syndrome. I don't believe I could relate this directly to work." He also stated that Lemons "may do regular work. I would not restrict her activities."
On May 4, 1998, Lemons informed the Trust Fund that she was experiencing symptoms with her left arm similar to those she had experienced with her right arm. On June 10, 1998, the Trust Fund requested that Dr. Thomas Wells perform an independent medical evaluation of Lemons. On July 24, 1998, after an initial examination of Lemons, Dr. Wells noted his impression that Lemons had "[p]ersistent lateral epicondylitis of the right elbow, status post lateral; release of the extensors of the right lateral epicondyle, beginning lateral epicondylitis of the left upper extremity"; Dr. Wells then began treating Lemons. On October 6, 1998, Dr. Wells performed a second surgery on Lemons's right elbow. Dr. Wells subsequently released Lemons to return to work.
On September 10, 1999, Dr. Wells informed the Trust Fund that Lemons had reached maximum medical improvement on February 26, 1999, and that she had no permanent partial impairment. Before receiving notice from Dr. Wells that she had reached maximum medical improvement, Lemons began seeing Dr. Roger Kemp and Dr. William Jordan, pain-management specialists. Those physicians were not approved by the Trust Fund; Lemons visited them on her own.[3] On October 15, 1999, Dr. Jordan sent a letter to Lemons's counsel responding to certain questions Lemons's counsel had posed to him in an October 7, 1999, letter; in that letter, Dr. Jordan stated, in pertinent part:
"In my opinion, [Lemons's] pain is genuine. There is a large component of stress and depression which is probably secondary to her pain. It is my understanding that Ms. Lemons['s] job responsibility is that of preparing a large payroll. I would say there is a relationship between the pain and her work especially if she does data entry work. She has also stated that her bilateral elbow pain preceded her neck and shoulder pain.
"I am at the present time unable to assess her ability to perform her work."
On December 7, 1999, upon a referral by Lemons's counsel, Dr. Michael McClanahan tested Lemons to determine her vocational-disability rating. On January 20, 2000, Dr. Kemp filed a "Physician's Report of Disability" with the Board of Control of the Retirement System of Alabama. In this report, Dr. Kemp stated (1) that he had treated Lemons from September 1, 1999, through January 12, 2000; (2) that Lemons had complained of neck and shoulder pain with pain radiating to the arms; (3) that Lemons had cervical radiculitis and bilateral carpal tunnel syndrome secondary to a repetitive-motion injury; and (4) that, in his opinion, Lemons was totally incapacitated for further performance of her work duties, was likely to be incapacitated *851 permanently, and should retire. On January 25, 2000, Lemons's counsel wrote a letter to the Trust Fund attaching Dr. Jordan's October 15, 1999, letter and Dr. Kemp's "Physician's Report of Disability." Lemons was subsequently granted disability retirement by the Board of Control of the Retirement System of Alabama; her last day of work was January 31, 2000.
On that same day, Dr. McClanahan issued a vocational-evaluation report; that report contained the following summary:
"In summary, this is a 46-year-old female who has been on the job with [AOC] as a Payroll Clerk since 1985. She has been struggling since December 1996 with upper extremity pain and diminished function, and the question is whether or not she can continue working in any capacity. Quite obviously, based on Ms. Lemon[s's] attestations, work is not reasonable until such time as her pain has been brought under control. She indicated that she has pain on an ongoing basis in the moderately severe to severe range, particularly when performing tasks that involve the upper extremities. It is noteworthy that virtually all jobs of a sedentary nature (the position of Payroll Clerk is typically sedentary, though it may not be in this specific case) require extensive use of the upper extremities. It is my opinion that Ms. Lemons needs extensive pain management services, possibly to include psychological assessment and treatment. Her Vocational Disability Rating is 100%."
The only medical records Dr. McClanahan reviewed in making his evaluation were those of Dr. Kemp. Dr. McClanahan specifically mentioned Dr. Kemp's "Physician's Report of Disability" to the Retirement System's Board of Control, in which Dr. Kemp diagnosed Lemons with cervical radiculitis and bilateral carpal tunnel syndrome secondary to repetitive-motion injury and in which Dr. Kemp found that Lemons would likely be permanently incapacitated. On February 11, 2000, Lemons's counsel wrote the Trust Fund, attaching Dr. McClanahan's vocational-evaluation report and seeking favorable consideration of Lemons's claim that she had a "100% job related disability."
The Trust Fund subsequently denied Lemons's claim that she was 100% disabled. On March 27, 2000, Lemons's counsel wrote the Trust Fund requesting a review of its decision by the Review Board. On April 6, 2000, the Trust Fund wrote Lemons's counsel acknowledging its receipt of her request for a Review Board hearing. On July 11, 2000, the Review Board conducted a hearing to review the Trust Fund's denial of Lemons's claim. Counsel for both Lemons and the Trust Fund argued their positions to the Review Board. Lemons was the only witness to testify at the hearing. During the hearing, one of the members of the Review Board asked whether the Trust Fund had assigned Lemons a vocational-disability rating. A representative of the Trust Fund replied as follows:
"No, because sheDr. Wells put it in with no restrictions and no impairment rating so she wasn't entitled to a vocational[-disability] rating with [the Trust Fund].
"....
"When an employee is released to return to work full duty with no restrictions, or if they have restrictions and the agency can accommodate the restrictions, then they're not entitled to a vocational[-disability] rating. A vocational[-disability] rating is when an employee is terminated due to a work-related injury, that's when we step in with a vocational[-disability] *852 rating. So she was not entitled to one."
On July 17, 2000, the Review Board issued a decision; it stated, in pertinent part:
"SUMMARY
"The Claimant's counsel introduced a report by Michael C. McClanahan, Ph. D., a vocational specialist, asserting that the Claimant had a 100% job related disability due to the fact that she could no longer perform her job due to pain. Two non-[Trust Fund] physicians, Drs. Kemp and Jordan, who are pain management specialists, determined the Claimant's pain was genuine and that there was a relationship between the pain and her work.
"The Claimant testified that when she requested a second opinion after treatment by Dr. Hodurski, she had not been informed that Dr. Hodurski had assigned a medical impairment rating.
"The [Trust Fund's] counsel argued that three orthopedic surgeons had determined the Claimant could return to her job. While the first of these to treat the Claimant's right arm injury found a 10%-3% medical impairment, the surgeon she chose for a second opinion found no disability. Likewise, the third orthopedic surgeon who treated her left arm determined that she had no medical impairment.
"CONCLUSION
"The rules permit [the Trust Fund] to direct claimants to specific medical care providers. The Claimant was ultimately treated by three [Trust Fund]-approved orthopedic surgeons, two of whom found no medical impairment and returned the Claimant to work without restrictions. The first of the three surgeons to treat the Claimant, Dr. Hodurski, determined the Claimant had a medical impairment of 10% to the extremity, 3% to the body. While the Claimant then requested a second opinion, she testified at the hearing that she had not been informed at the time of her request that a medical impairment rating had been assigned. That testimony was not rebutted. While the knowledge of the medical impairment rating may or may not have made a difference in the Claimant's decision to request a second opinion, she should have had the benefit of the information.
"The Review Board finds that it is appropriate for [the Trust Fund] to rely on the judgment of its approved physicians, and that the medical record does not support the claim of 100% vocational disability. The Review Board directs that the Claimant be awarded the benefits appropriate to Dr. Hodurski's finding of 10% impairment to the extremity, 3% to the body, whichever is the larger benefit."
On August 16, 2000, Lemons filed a "Notice of Appeal or Review" in the trial court pursuant to § 41-22-20, Ala.Code 1975. On August 18, 2000, Lemons filed a "Petition for Review" arguing, in pertinent part, as follows:
"7. The decision of the Review Board is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Indeed, the uncontradicted evidence is that [Lemons] suffered a physical injury that totally incapacitates her from working at and being retrained for gainful employment.
"8. The decision of the Review Board is unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion, in that it ignored uncontradicted evidence that [Lemons's] vocational disability rating was 100%."
*853 On February 2, 2001, on Lemons's motion, the trial court remanded the case for the Review Board to consider a September 7, 2000, ruling by an administrative law judge for the Social Security Administration's Office of Hearings and Appeals that Lemons was disabled within the meaning of the Social Security Act. On April 19, 2001, the Review Board issued a decision stating that it had reviewed the administrative law judge's ruling, but that that ruling did not change its findings.
On June 19, 2001, Lemons filed a brief in support of her petition; the Trust Fund filed a responsive brief on July 3, 2001. On March 27, 2002, the trial court entered an order stating findings of fact mostly consistent with the facts previously set out in this opinion and additionally stating, in pertinent, the following conclusions of law:
"CONCLUSIONS OF LAW
"1. [The Trust Fund] was established by the legislature by Acts of Alabama, No. 94-680 and was codified as § 36-29A-1 et seq., Code of Alabama 1975.
"2. The legislature empowered the Director of Finance `to implement a program to provide compensation for employees of the state and its agencies, departments, boards or commissions who suffer personal injury as a result of accidents arising out of and in the course of their state employment, under such terms and conditions as the Director of Finance shall determine.' Section 36-29A-1. (Emphasis added [by the trial court].)
"3. The Director of Finance promulgated rules to govern the operation and administration of the injury program, which rules are found at 355-8-1.01 et seq. of the Administrative Code.
"4. Under the statute establishing the [Trust Fund] program, the program `is not governed by or subject to the provisions of ... the Alabama Workers' Compensation Law.' See § 36-29A-4, Code of Alabama 1975.
"5. Under the terms and conditions of [the Trust Fund], benefits under the program are payable only for those whose medical condition arose out of and in the course of their employment. See, e.g., 355-8-1.04(a)(4)d.
"6. Ms. Lemons's right elbow condition, under the definitions provided by [the Trust Fund] was not considered an injury nor did it result from an accident; it was more in the form of occupational disease, as defined by [the Trust Fund]. Consequently, the burden of proof imposed upon Ms. Lemons is not `by a preponderance of the evidence' but rather `by clear and convincing evidence.' See 355-8-1.04(w).
"Based on the facts and evidence of this case, it is hereby ORDERED, ADJUDGED, AND DECREED that the decisions rendered by the ... Review Board, both the original and the decision on remand, are hereby MODIFIED as follows:
"1. The Court finds that Ms. Lemons is entitled to a permanent partial disability rating of 30%."
On May 9, 2002, Lemons filed a notice of appeal to this court; on May 15, 2002, the Trust Fund filed notice of its cross-appeal.
On appeal, Lemons argues (1) that the Review Board erred by ignoring the uncontradicted evidence of her 100% vocational-disability rating and by basing its award solely on Dr. Hodurski's medical-impairment rating, and (2) that the trial court, while correctly determining that the Review Board's decision was improper, also erred by awarding only a 30% disability rating in view of the uncontradicted evidence of her 100% vocational-disability rating. In its cross-appeal, the Trust *854 Fund argues (1) that the record supports the Review Board's decision, asserting, in part, that Lemons failed to utilize the Trust Fund's rules to obtain reconsideration of her vocational-disability rating, (2) that the trial court erred by substituting its judgment for that of the Review Board when it modified the Review Board's decision to state that Lemons had a 30% permanent-partial-disability rating, and (3) that it failed to provide specific reasons to support its modification, pursuant to § 41-22-20(l), Ala.Code 1975.
This court has stated the applicable standard of review as follows:
"This court reviews a trial court's judgment regarding the decision of an administrative agency `without any presumption of its correctness, since [the trial] court was in no better position to review the [agency's decision] than' this court. State Health Planning & Res. Dev. Admin. v. Rivendell of Alabama, Inc., 469 So.2d 613, 614 (Ala.Civ.App. 1985). Under the Alabama Administrative Procedure Act (`AAPA'), § 41-22-1 et seq., Ala.Code 1975, which governs judicial review of agency decisions,
"`[e]xcept where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
"`(1) In violation of constitutional or statutory provisions;
"`(2) In excess of the statutory authority of the agency;
"`(3) In violation of any pertinent agency rule;
"`(4) Made upon unlawful procedure;
"`(5) Affected by other error of law;
"`(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
"`(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.'
"§ 41-22-20(k), Ala.Code 1975.... In reviewing the decision of a state administrative agency, `[t]he special competence of the agency lends great weight to its decision, and that decision must be affirmed, unless it is arbitrary and capricious or not made in compliance with applicable law.' Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App.1993).... Neither this court nor the trial court may substitute its judgment for that of the administrative agency. Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App.1993). `This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.' Health Care Auth. of Huntsville v. State Health Planning Agency, 549 So.2d 973, 975 (Ala.Civ.App. 1989). Further, `an agency's interpretation *855 of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.' Sylacauga Health Care Ctr., Inc. v. Alabama State Health Planning Agency, 662 So.2d 265, 268 (Ala.Civ.App.1994)."
Colonial Mgmt. Group, L.P. v. State Health Planning & Dev. Agency, 853 So.2d 972, 974-75 (Ala.Civ.App.2002)(emphasis omitted).
Lemons argues that the Review Board erred by ignoring the uncontradicted evidence of her 100% vocational-disability rating assigned to her by Dr. McClanahan and by determining her permanent-partial-disability rating solely on the medical-impairment rating assigned by Dr. Hodurski. The Trust Fund argues that Lemons failed to petition the Review Board to reconsider her claim based upon her vocational-disability rating. The rule relied upon by the parties to make their respective arguments is Ala. Admin. Code (Dep't of Finance) Rule 355-8-1-.04(a)(3)i. That rule states:
"i. Return to Work.If, on or after the date of maximum medical improvement, except for scheduled injuries as provided in Rule .04(a)(3), an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's permanent partial disability rating shall be equal to his or her physical impairment and the program shall not consider any evidence of vocational disability. Notwithstanding the foregoing, if the employee has lost his or her employment under circumstances other than any of the following within a period of time not to exceed 300 weeks from the date of injury, an employee may petition the Review Board within two years thereof for reconsideration of his or her permanent partial disability rating:
"(i) The loss of employment is due to a labor dispute still in active progress in the establishment in which he or she is or was last employed. For the purpose of this section only, the term `labor dispute' includes any controversy concerning terms, tenure, or conditions of employment, or concerning the association or representation of person in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his or her employer.
"(ii) The loss of employment is voluntary, without good cause connected with such work.
"(iii) The loss of employment is for a dishonest or criminal act committed in connection with his or her work, for sabotage, or an act endangering the safety of others.
"(iv) The loss of employment is for actual or threatened misconduct committed in connection with his or her work after previous warning to the employee.
"(v) The loss of employment is because a license, certificate, permit, bond, or surety which is necessary for the performance of such employment and which he or she is responsible to supply has been revoked, suspended, or otherwise become lost to him or her for a cause.
"The burden of proof is on the employer to prove, by clear and convincing evidence, that an employee's loss of employment was due to one of the causes (i) through (v) above. At the hearing, the Review Board may consider evidence as to the earnings the employee is *856 or may be able to earn in his or her partially disabled condition, and may consider any evidence of vocational disability. The fact the employee had returned to work prior to his or her loss of employment shall not constitute a presumption of no vocational impairment. In making this evaluation, the Review Board shall consider the permanent restriction, if any, imposed by the treating physician under Rule .04(p), as well as all available reasonable accommodations that would enable the employee in his or her condition following the accident or onset of occupational disease to perform jobs that he or she in that condition otherwise would be unable to perform, and shall treat an employee able to perform with such accommodation as though he or she could perform without the accommodation."
It is undisputed that Lemons lost her employment within 300 weeks of her injury by virtue of her receiving disability retirement. While her loss of employment was voluntary, we conclude that it was for good cause. Furthermore, in regard to the Trust Fund's argument that Lemons failed to petition the Review Board to reconsider her claim in light of her vocational-disability rating, we conclude that it was unnecessary for Lemons to petition the Review Board to reconsider something that it had failed to consider in the first instance. At the time of the Review Board hearing, Lemons had already lost her employment and the results of Dr. McClanahan's vocational evaluation were before the Review Board for its consideration. Therefore, the Trust Fund representative's response to the Review Board when asked whether a vocational-disability rating had been assigned (i.e., that Lemons was not entitled to one because she had returned to work) was incorrect. Accordingly, the Review Board should have considered her vocational-disability rating when it determined her permanent-partial-disability rating.
While the Review Board's decision stated that Lemons's 100% vocational-disability rating was not supported by the medical evidence, it failed to determine what vocational-disability rating the evidence did support. The Review Board's determination of Lemons's permanent-partial-disability rating based solely on Dr. Hodurski's medical-impairment rating was therefore erroneous. While we note that Dr. McClanahan's vocational evaluation was made after reviewing the medical records of only Dr. Kemp, who had diagnosed Lemons with disabling injuries other than her work-related injury in recommending that she receive disability retirement, that was the only vocational-disability rating before the Review Board. The Review Board should have determined what portion of Dr. McClanahan's assigned vocational-disability rating could be attributed to Lemons's work-related injury.
We therefore conclude that the Review Board should have considered Dr. McClanahan's vocational-evaluation report. Further, because the Review Board sat as the initial fact-finder in this case, it would be more appropriate to allow it the opportunity to weigh the evidence presented in the record, giving full consideration to Dr. McClanahan's vocational-evaluation report. While § 41-22-20(k), Ala.Code 1975, could reasonably be interpreted to permit the trial court to modify the Review Board's decision in this case, we conclude that the better practice would be to remand this case to the Review Board because that section also provides that a "court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." See also 2 Am.Jur.2d Administrative Law § 531 (1994)("A reviewing court, having determined that an *857 administrative agency did not consider all relevant factors, should ordinarily remand the matter to the agency rather than compensating for the agency's oversight by launching a judicial inquiry into the merits."), and 2 Charles H. Koch, Jr., Administrative Law and Practice § 8.31 (2d ed.1997), ("Traditionally, courts performing a review function under a statutory petition for review or other form of proceeding rely heavily on some form of remand.... Remand allows for correction while still maintaining the proper allocation of responsibility between the courts and the agencies.").
Accordingly, we reverse the trial court's judgment insofar as it modified the decision of the Review Board, and we remand the cause for the trial court, in turn, to remand to the Review Board for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
THOMPSON, J., concurs in the result.
MURDOCK, J., concurs in the result in part and dissents in part.
MURDOCK, Judge, concurring in the result in part and dissenting in part.
While I do not agree fully with the majority's reasoning, I concur in the result reached by the majority insofar as it remands this cause for further consideration by the administrative agency. I dissent, however, as to the instruction to be given the administrative agency on remand.
I concur to remand this cause because I agree that the evidence of Lemons's vocational impairment should have been considered. However, while the majority states that it would be "better practice" to remand this cause to the Review Board of the State Employee Injury Compensation Trust Fund (the "Review Board"), I am of the opinion that the cause must be remanded to the circuit court for remand, in turn, to the Review Board for the Review Board to consider evidence of Lemons's vocational impairment.
Section 36-29A-8, Ala.Code 1975, provides for a determination of disputes by the Review Board. Section 36-29A-4, Ala. Code 1975, provides that a final determination by the Review Board shall be subject to review by the Montgomery Circuit Court in a manner prescribed by the Alabama Administrative Procedure Act ("AAPA"), § 41-22-1 et seq., Ala.Code 1975. The fact-finder in the present case, therefore, was the Review Board. If that fact-finder failed to consider competent evidence, unless the circuit court or this court can determine as a matter of law the correct outcome based on a consideration of that evidence, the proper course is to remand the cause to the fact-finder for consideration of that evidence and the weighing thereof with and against the other evidence of record, including evidence received by the fact-finder ore tenus. See § 41-22-20(k), Ala.Code 1975; see also § 41-22-20(i), Ala.Code 1975. "When there is a conflict in the testimony, it is the duty of the trier of fact, in this instance, the administrative hearing officer, to resolve that conflict." Alabama Dep't of Public Health v. Perkins, 469 So.2d 651, 653 (Ala.Civ.App.1985). See also Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App.1993) (neither this court nor the trial court may substitute its judgment for that of the administrative agency); 2 Am.Jur.2d Administrative Law § 531 (1994).[4]
*858 With respect to the instruction in the majority opinion that the Review Board should conduct further proceedings "consistent with this opinion," 856 So.2d at 857, I note that that opinion states that, while "Dr. McClanahan's vocational evaluation was made after reviewing the medical records of only Dr. Kemp, ... that was the only evidence of vocational disability before the Review Board." 856 So.2d at 856. I disagree with the latter statement in two respects. First, as reflected elsewhere in the majority opinion, Dr. McClanahan's vocational evaluation was based not only on Dr. Kemp's medical records, but also on testing and an interview which Dr. McClanahan, himself, conducted. 856 So.2d at 850. Second, and more importantly, I do not agree that Dr. McClanahan's vocational-evaluation report was "the only evidence of vocational disability" before the Review Board. 856 So.2d at 856.
Lemons herself, as well as Dr. Kemp and Dr. Jordan, provided evidence probative of Lemons's vocational disability. With respect to Lemons's testimony, I note that
"`[a]n injured employee's own subjective complaints of pain are legal evidence which may support a finding of disability.' Jim Walter Resources, Inc. v. Budnick, 619 So.2d 926, 927 (Ala.Civ.App. 1993). Further, `[t]he [fact-finder] is afforded much discretion in determining an employee's loss of earning capacity and may consider such factors as the age, education, and work history, as well as the effect of the injury on the employee's earning ability.' M & H Valve Co. v. Carmichael, 607 So.2d 224, 226 (Ala. Civ.App.1991)."
Asplundh Tree Expert Co. v. Latham, 656 So.2d 839, 841 (Ala.Civ.App.1995) (considering an employee's vocational-disability rating under the Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975, in light of the employee's own testimony regarding her pain and restrictions). See also Jackson v. Dunlop Tire & Rubber Corp., 487 So.2d 940 (Ala.Civ.App.1986) (including consideration of an employee's own testimony as to loss of use of a leg in determining the extent of the employee's disability under the Workmen's Compensation *859 Act); Ellenburg v. Jim Walter Res., Inc., 680 So.2d 282 (Ala.Civ.App.1996) (noting that a trial court properly considers a claimant's pain in the context of a vocational-disability determination under the Workers' Compensation Act).
As this court stated in Fryfogle v. Springhill Memorial Hospital, Inc., 742 So.2d 1255 (Ala.Civ.App.1998), with respect to a trial court's finding as to the extent of disability under the Alabama Workers' Compensation Act:
"It is the duty of the [fact-finder] to make some determination as to the extent of disability. In making the determination, the [fact-finder] must consider all the evidence, including its own observations, and interpret it to its own best judgment. [The appellate court] is precluded from weighing the evidence presented before the [fact-finder]."
742 So.2d at 1258 (citations omitted). Because the Review Board is obligated to consider all evidence of vocational impairment, I disagree with the indication in the majority opinion that the error in this case can be cured on remand merely by considering Dr. McClanahan's vocational-evaluation report.
NOTES
[1] The Trust Fund does not challenge the compensability of Lemons's injury.
[2] This was stated by counsel for the Trust Fund during the hearing before the Review Board and supported by an August 17, 1998, letter from the Trust Fund's medical-benefits manager to Dr. Hodurski. The record before the Review Board contains no medical records from Dr. Hodurski containing an assignment of those impairment ratings. Counsel for the Trust Fund also stated that the assignment of those impairment ratings was confirmed in a June 19, 1998, letter from Dr. Hodurski. That letter also does not appear in the record before the Review Board. At the hearing, Lemons testified that she was never made aware of the impairment ratings Dr. Hodurski had assigned her.
[3] When questioned about this during the hearing before the Review Board, Lemons testified as follows:

"Q. And then you, on your own, went to see Dr. Kemp and Dr. Jordan, correct?
"A. I had to get some relief.
"Q. You weren'tthey weren't panel doctors that were chosen ..., were they? [The Trust Fund] didn't give you those doctors to go to, did they?
"A. I was told that until we received the [maximum medical improvement] form from Dr. Wells there was nothing else that could be done as far as [the Trust Fund] was concerned.
"Q. Okay. And my question is, you went to those doctors on you own, correct?
"A. I had no choice."
[4] The majority cites to 2 Charles H. Koch, Jr., Administrative Law & Practice § 8.31 (2d ed.1997), referencing in part that treatise's statement that "[r]emand allows for correction while still maintaining the proper allocation of responsibilities between the courts and the [administrative] agencies." That same source, quoting Whittington v. Merit Systems Protection Board, 80 F.3d 471, 476 (Fed.Cir. 1996), observes:

"`The Board failed to make relevant factual findings or apply the appropriate statutory and regulatory law.... As a result, we can neither reverse nor affirm the Board's decision because either action would require us to apply law the Board did not consider to facts the Board did not consider; such complete de novo review is not our proper role and would deprive the parties of the process they are due. Therefore, we vacate and remand for further proceedings consistent with this opinion.'"
Elsewhere in the same treatise, the author states as follows:
"Remand is the proper remedy where the court doubts that the agency has properly exercised its discretion but recognizes that it is the agency which should exercise that discretion and not the court. If a reviewing court finds that the record does not support the agency's conclusions, it may not conduct a de novo inquiry but must remand to the agency for additional investigation and explanation. Where the court finds that the agency has not presented a legally sufficient basis for its decision, the proper remedy is remand. `Normally, when a court of appeals concludes that any agency's decision is not adequately supported, it remands so that the agency may enlarge the record or apply correct legal principles to the existing record.'"
2 Charles H. Koch, Jr., Administrative Law & Practice § 8.31[1](a) (2d ed. Supp.2002)(emphasis added; quoting Board of Trade of City of Chicago v. S.E.C., 187 F.3d 713, 725-26 (7th Cir.1999)).